**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALPHA ENTERTAINMENT, LLC, | ) | U.S. Bankruptcy Court for the |
| | ) | District of Delaware, Case No. |
| | ) | 20-10940 (LSS) |
| _____ | ) | |
| PETER HURWITZ, solely in his capacity as Plan | ) | |
| Administrator of Alpha Entertainment LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:23-CV-00118-VAB |
| OLIVER LUCK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| OLIVER LUCK, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VINCENT K. McMAHON, | ) | |
| | ) | |
| Third Party Defendant. | ) | February 21, 2023 |

**THIRD PARTY DEFENDANT VINCENT K. McMAHON'S**
**MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION**
**TO DISMISS THIRD PARTY COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.         INTRODUCTION ...................................................................................... 1

II.        statement of facts ................................................................................. 5

      A.    Alpha Hires Luck to Be XFL Commissioner Pursuant to the Employment Contract ................................................................................... 5

      B.    McMahon Guarantees Alpha's Obligations Under the Employment Contract ...... 6

      C.    Alpha Files for Bankruptcy ................................................................... 6

      D.    The Connecticut Action ........................................................................ 7

      E.    Luck Moves For Relief from the Bankruptcy Stay to Join Alpha In the Connecticut Action ............................................................................. 8

      F.    Alpha, Through its Plan Administrator, Files the Avoidance Action Against Luck ................................................................................................. 9

      G.    Luck Seeks to Prevent the Delaware Bankruptcy Court from Hearing the Avoidance Action ................................................................................ 9

      H.    Luck's Third Party Complaint Against McMahon Seeks Indemnity for Alpha's Claims Against Luck .......................................................................... 10

      I.    The Delaware Bankruptcy Court Grants Luck's Motion for Transfer of Venue ................................................................................................. 11

III.       ARGUMENT ...................................................................................... 11

      A.    Legal Standard ................................................................................... 11

      B.    McMahon Has No Indemnity Obligation to Luck Under the Guaranty Unless and Until Luck Establishes that Alpha Has An Obligation to Him and Breached that Obligation Under the Employment Contract ........................................... 12

      C.    Alpha Has Not Breached Any Indemnity Obligation to Luck With Respect to the Avoidance Action Under the Employment Contract ............................... 13

          1.    Luck Is Barred From Asserting Any Claim Against Alpha ..................... 13

          2.    *Alpha's* Avoidance Action Is Not Subject to the Indemnification Provision of Luck's Employment Contract with *Alpha* ........................... 15

               a.    The Indemnification Provision of Luck's Employment Contract with *Alpha* Only Applies to Actions Brought By A "Third Party" ........................................................................... 15

               b.    Luck Has Repeatedly Admitted that the Avoidance Action Was Brought By Alpha and Not A Third Party ................................... 15

          3.    Alpha Has No Indemnity Obligation to Luck Under the Employment Contract For Monies that Alpha Already Paid to Luck As Compensation In Accordance With the Employment Contract ........................................ 19

IV.      CONCLUSION ................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelphia Recovery Trust v. HSBC Bank USA*,
   634 F.3d 678 (2d. Cir. 2011) ................................................................................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 11, 12

*Brass v. Am. Film Techs., Inc.*,
   987 F.2d 142 (2d Cir. 1993) ............................................................................................ 1, 12

*DeForest v. Bank of New York Mellon*,
   No. 3:17-CV-01504-VAB, 2018 WL 4078275 (D. Conn. Aug. 27, 2018)
   (Bolden, J.) ................................................................................................................................ 1

*In re Howard's Exp., Inc.*,
   151 Fed. Appx. 46 (2d Cir. 2005) ............................................................................................. 1

*Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Inv'rs, L.P.*,
   97 Conn. App. 541 (2006) ...................................................................................................... 20

*Welch v. Stonybrook Gardens Coop., Inc.*,
   158 Conn. App. 185 (2015) .................................................................................................... 20

*Zedner v. United States*,
   547 U.S. 489 (2006) ................................................................................................................ 18

**Statutes**

28 U.S.C. § 1404(a) .................................................................................................................... 11

28 U.S.C. § 1412 ........................................................................................................................ 11

Bankruptcy Code § 544 ................................................................................................................ 9

Bankruptcy Code § 547 ................................................................................................................ 9

Bankruptcy Code § 548 ................................................................................................................ 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 11, 21

Fed. R. Civ. P. 19 .................................................................................................................. 7, 12

Fed. R. Evid. 201 ....................................................................................................................1

Third Party Defendant Vincent K. McMahon ("McMahon") respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Third Party Complaint dated August 17, 2022 (the "Third Party Complaint"), filed by Defendant and Third Party Plaintiff Oliver Luck ("Luck").

## I.    INTRODUCTION

The Debtor, Alpha Entertainment LLC ("Alpha"), hired Luck to be Commissioner of the XFL[1] professional football league. The COVID pandemic forced the cancellation of the XFL's inaugural season in March 2020. In April 2020, Alpha terminated Luck for cause and filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court"). *See* Case No. 20-10940-LSS (Bankr. Del.) ("Alpha Bankruptcy"), ECF No. 1. The Delaware Bankruptcy Court confirmed Alpha's Second Amended Chapter 11 Plan (the "Plan," Ex. A hereto) by Order dated December 11, 2020 (the "Confirmation Order," Ex. B hereto).[2]

Pursuant to the Plan and the Confirmation Order, Peter Hurwitz was designated as Alpha's Plan Administrator (the "Plan Administrator") and was exclusively authorized to bring Alpha's claims on behalf of Alpha's bankruptcy estate. Under that authority, the Plan Administrator filed a complaint against Luck for avoidance of fraudulent transfers and preferences (the "Avoidance

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Luck's Third Party Complaint.

[2]    For the Court's convenience, all cited filings from the Delaware Bankruptcy Court are attached as exhibits hereto. The Court may take judicial notice of such filings. *See* Fed. R. Evid. 201; *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (stating that, on a motion to dismiss, courts can consider "matters of which judicial notice may be taken"); *In re Howard's Exp., Inc.,* 151 Fed. Appx. 46, 48 (2d Cir. 2005) (taking judicial notice of bankruptcy court docket and filings); *DeForest v. Bank of New York Mellon,* No. 3:17-CV-01504-VAB, 2018 WL 4078275, at *5 n.2 (D. Conn. Aug. 27, 2018) (Bolden, J.) ("Bankruptcy court filings are public records and therefore judicial notice is appropriate.").

Action").  *See* Case No. 22-50256-LSS (Bankr. Del.), ECF No. 1.  The Avoidance Action seeks to recoup approximately $11.1 million, or some portion thereof, of the salary and bonuses that Alpha paid to Luck under his Contract for Employment as Commissioner and CEO of the XFL (the "Employment Contract") prior to his termination.  *See* Avoidance Action, ECF No. 1.

After being sued in the Avoidance Action, Luck filed the Third Party Complaint seeking indemnity from McMahon in the event Luck is required to pay back any portion of the monies that Alpha paid to him prior to his termination.  There are two legal constructs to Luck's claim.  As a first step, Luck relies upon language in his Employment Contract whereby Alpha agreed to indemnify Luck for claims against him "brought by any third party."  As a second step, Luck then contends that McMahon personally guaranteed Alpha's indemnification obligations under the Guaranty that was attached as Exhibit A to the Employment Contract (the "Guaranty").  *See* Avoidance Action, ECF No. 27 at ¶¶ 14-17.  On this basis, Luck claims that, "[p]ursuant to the Guaranty, McMahon is required to indemnify Luck as set forth in the Employment Contract."  *Id.* at ¶ 37.  Luck's indemnity claim against McMahon, however, ignores the plain language of both the Employment Contract and the Guaranty as well as a prior ruling by this Court interpreting those contracts, all of which are fatal to his claim.

The Guaranty by McMahon did ***not*** grant Luck any additional rights beyond those to which he was entitled under his Employment Contract with Alpha.  As the Guaranty stated:

> The Guarantor [McMahon] hereby irrevocably and unconditionally guarantees, as primary obligor and not merely as a surety, ***the due and punctual payment and performance by the Obligor [Alpha] of all of its agreements and obligations*** . . . .

*See* Avoidance Action, ECF No. 27-1 at 7 (emphasis added).

In prior litigation over Luck's termination in this Court captioned *Oliver Luck v. Vincent K. McMahon and Alpha Entertainment LLC*, Case No. 3:20-cv-00516-VAB (the "Connecticut

Action"), the parties litigated, and this Court decided, the scope of McMahon's obligations under the Guaranty.  Specifically, this Court ruled that:

> Mr. McMahon only guaranteed "the due and punctual payment and performance by [Alpha] of all its agreements and obligations . . . ."
>
> **To prevail against Mr. McMahon as a guarantor [under the Guaranty],** *Mr. Luck thus would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract.*

*See* Connecticut Action, ECF No. 79 at 13 (emphasis added; brackets in original).  Given this Court's prior ruling construing the Guaranty, Luck's Third Party Complaint against McMahon fails at the first step because Luck cannot and has not sought indemnity from Alpha in the Avoidance Action, much less established that Alpha must indemnify him on claims brought by Alpha, which would be necessary to trigger any obligation by McMahon under the Guaranty.

Luck cannot impose an indemnity obligation on Alpha as a matter of law because Luck waived any right to seek any recovery against Alpha or its bankruptcy estate under the Delaware Bankruptcy Court's Order Granting Luck's Motion for Relief from Stay to Join Alpha in the Connecticut Action dated August 7, 2020.  *See* Alpha Bankruptcy, ECF No. 355 (Ex. C hereto), at 2-3.  Based on Luck's repeated representations that he would not pursue a claim or otherwise seek monetary relief against Alpha, the Delaware Bankruptcy Court granted Luck's Motion on the condition that "***Mr. Luck shall not file a proof of claim against the Debtor or its estate and is hereby deemed to waive, and shall be forever barred from obtaining, any recovery against Debtor or its bankruptcy estate on account of any claim or claims (as defined in the Bankruptcy Code) against the Debtor or its bankruptcy estate in this bankruptcy case***."  *Id.* (emphasis added).

Moreover, even if Luck was not foreclosed from bringing an indemnity claim against Alpha by virtue of his prior waiver and the aforementioned order of the Delaware Bankruptcy

Court, any such claim would be, and is, foreclosed by the plain language of the Employment Contract, which imposes an indemnity obligation on Alpha only for claims against Luck "brought by any third party."  But the Avoidance Action against Luck has been brought by Alpha itself, not by a "third party."  Notably, Luck himself has repeatedly represented to this Court that "Alpha and the Plan Administrator are one and the same" and that the Avoidance Action asserts *Alpha's* claims against Luck:

- "***Alpha, through its Plan Administrator, filed*** [the Avoidance Action] against Mr. Luck . . . ."  Connecticut Action, ECF No. 448 at 1 (emphasis added).

- "The bottom line is that the [Avoidance Action] is nothing more than an attempt ***by Alpha***, and its principal creditor Mr. McMahon, to obtain the proverbial 'second bite of the apple' at Mr. Luck's expense ***by asserting claims that rely on many of the same factual grounds that Alpha has previously litigated in this Court***."  Connecticut Action, ECF No. 448 at 1 (emphasis added).

- "***Alpha and the Plan Administrator are one and the same*** . . . . While Section 5.4.3 [of the Plan] gives the Plan Administrator the power to prosecute the retained causes of action, it does not prevent Alpha from prosecuting the claims or in any way change the fact that ***the claims are Alpha's.***"  Connecticut Action, ECF No. 448-1 at 1 n.1 (italicized emphasis in original; bold emphasis added).

- "Moreover, ***any alleged claims in the [Avoidance Action] are compulsory counterclaims which Alpha should have brought in this [Connecticut Action] long ago***."  Connecticut Action, ECF No. 448-1 at 2 (emphasis added).

- "Therefore, ***the Court should enjoin Alpha from prosecuting its claims in the Delaware Bankruptcy Court under the 'first filed' rule***, at least until the trial of this action is concluded, ***because the parties and issues in both proceedings are the same*** (or, at a minimum, 'not so different.')."  Connecticut Action, ECF No. 448-1 at 8 (emphasis added).

- "Having voluntarily appeared before this Court, ***Alpha should not now be permitted to pursue claims based on many of the same underlying issues in another court***."  Connecticut Action, ECF No. 448-1 at 9 (emphasis added).

- "Alpha's contractual arrangements should not require Mr. Luck to litigate the same underlying issues ***against Alpha in two separate courts*** located in different states and falling within different federal circuits."  Connecticut Action, ECF No. 448-1 at 10 (emphasis added).

- "*Alpha's bankruptcy claims and its counterclaims in this Court* embrace the same issues."  Connecticut Action, ECF No. 455 at 5 (emphasis added).

- "Naming the Opposition the 'Opposition of Peter Hurwitz, Plan Administrator of Alpha Entertainment LLC' *does not magically change the Opposition from being Alpha's.  The Plan Administrator acts on behalf of and in the name of Alpha and advances Alpha's claims, defenses, and arguments.*"  Connecticut Action, ECF No. 455 at 1 n.1 (emphasis added).

Luck cannot now advance a position contrary to his prior representations to this Court.

Lastly, Luck also is foreclosed from seeking indemnity against Alpha for salary and bonuses that Alpha *already* paid him under the Employment Contract as to which Luck may now be ordered to reimburse Alpha in the Avoidance Action.  The indemnification provision of the Employment Contract does not obligate either Alpha or McMahon to pay Luck twice.  Luck's construction of the indemnification provision is essentially that Alpha agreed to indemnify Luck for suits against him by Alpha, a peculiarly perverse contractual promise.  Such an interpretation would be nonsensical, and therefore impermissible, under Connecticut law (which governs the interpretation of the Employment Contract and the Guaranty).

In short, the Third Party Complaint should be dismissed with prejudice because Alpha has no indemnity obligation to Luck under the Employment Contract and, therefore, McMahon can have no indemnity obligation to Luck under the Guaranty.

## II.     STATEMENT OF FACTS

### A.     Alpha Hires Luck to Be XFL Commissioner Pursuant to the Employment Contract

McMahon formed Alpha for the purpose of operating the XFL.  *See* Avoidance Action, ECF No. 27 at ¶ 9.  Alpha was principally owned and capitalized by McMahon.  *Id.* ¶ 10.  In May 2018, Alpha hired Luck to be the XFL's Commissioner, with Alpha and Luck entering into the Employment Contract on or about May 30, 2018.  McMahon signed the Employment Contract for Alpha.  *Id.* at ¶¶ 11-12 & ECF No. 27-1.  The Employment Contract is "governed by and construed

in accordance with the laws of Connecticut without regard to its choice of law rules." Avoidance

Action, ECF No. 27-1 at 4.

Among other things, the Employment Contract contains an indemnification provision that

provides:

> To the fullest extent permitted by law, both during and after the
> Term, Alpha shall pay all reasonable expenses incurred by Mr. Luck
> and any judgments or fines rendered or levied against Mr. Luck in
> any action, arbitration, investigation or other proceeding ***brought by
> any third party against Mr. Luck*** (whether or not the XFL, Alpha
> or any of their affiliates is a party to that action) that arises from or
> otherwise relates to the course or scope of Mr. Luck's employment,
> unless such action or other proceeding arises from Mr. Luck's gross
> negligence or willful misconduct. . . .

*Id.* at 4-5 (emphasis added).

## B.      McMahon Guarantees Alpha's Obligations Under the Employment Contract

Concurrent with the execution of the Employment Contract, Luck and McMahon signed

the Guaranty, which is attached as Exhibit A to the Employment Contract.  Avoidance Action,

ECF No. 27 at ¶ 15.  Pursuant to the Guaranty, McMahon:

> [I]rrevocably and unconditionally guarantees**,** as primary obligor
> and not merely as a surety, the due and punctual payment and
> performance by the Obligor [Alpha] of all of its agreements and
> obligations under the Transaction Documents [which include the
> Employment Contract].

Avoidance Action, ECF No. 27-1 at 7 (emphasis added).  Like the Employment Contract, the

Guaranty is governed by Connecticut law.  *Id.*

## C.      Alpha Files for Bankruptcy

After the COVID-19 pandemic forced the cancellation of the XFL's inaugural season in

March 2020, Alpha filed for Chapter 11 bankruptcy in the Delaware Bankruptcy Court on April

13, 2020.  *See* Alpha Bankruptcy, ECF No. 1, Ex. D hereto.  Alpha's Bankruptcy Plan, as

confirmed by the Delaware Bankruptcy Court, gave the Plan Administrator, Peter Hurwitz, the

exclusive power and authority to bring Alpha's claims on behalf of Alpha's bankruptcy estate.  *See*

Alpha Bankruptcy, ECF Nos. 592 & 592-1, Ex. A; Confirmation Order ¶ 18, Ex. B.

### D.      The Connecticut Action

On April 16, 2020, Luck filed the Connection Action against McMahon in this Court

pursuant to the Guaranty, asserting claims for breach of contract and a related declaratory judgment

arising out of Luck's termination.  By that Action, Luck sought to have McMahon personally pay

the remaining unpaid amounts of salary and bonuses, which would otherwise have been due for

the remaining years of his Employment Contract — an amount of approximately $24 million.

Alpha had terminated Luck for cause for, among other reasons, Luck's gross negligence of his

duties, including an intentional failure to follow applicable XFL policies or directives.  Connecticut

Action, ECF No. 57 at 21.

Certain aspects of this Court's rulings in the prior Connection Action are pertinent here.

In particular, because Luck initially filed suit only against McMahon, McMahon argued that Alpha

was a necessary and indispensable party to the Connecticut Action under Fed. R. Civ. P. 19.  After

extensive briefing and argument on the issue, this Court interpreted McMahon's obligations under

the Guaranty, ruling as follows:

> Mr. McMahon only guaranteed "the due and punctual payment and
> performance by [Alpha] of all its agreements and obligations . . . ."
>
> **To prevail against Mr. McMahon as a guarantor [under the
> Guaranty], *Mr. Luck thus would have to establish that Alpha still
> had an obligation to him and breached that obligation under the
> Employment Contract.***

*See* Connecticut Action, ECF No. 79 at 13 (bold emphasis added; first brackets in original).

Based on this ruling, this Court held that Alpha was a necessary party to the Connecticut

Action "because the issue of whether Alpha validly terminated Mr. Luck for cause under the

Employment Contract, to which the Guaranty applies, must be resolved, and Alpha's absence in this action 'impede[s] [its] ability to protect' its 'interest relating the subject of the action.'" *Id.* at 14-15 (citations omitted).  This Court further held that Alpha was an indispensable party because "a party to a contract at issue 'is the paradigm of an indispensable party.'" *Id.* at 15 (citations omitted).  As a result of its holding that Alpha was a necessary and indispensable party, this Court stayed the Connecticut Action "until Alpha can be joined as an indispensable party, pending the resolution of [Alpha's] bankruptcy proceedings." *Id.* at 17.

**E.      Luck Moves For Relief from the Bankruptcy Stay to Join Alpha In the Connecticut Action**

        In response to this Court's ruling that Alpha was a necessary and indispensable party to the Connecticut Action, Luck filed a Motion for Relief from Stay to Join Alpha Entertainment LLC As Nominal Defendant in Pending Proceeding (the "Motion for Relief from Stay") in the Delaware Bankruptcy Court on July 17, 2020.  As set forth below, Luck repeatedly represented to the Delaware Bankruptcy Court that he would not pursue a claim or otherwise seek monetary relief against Alpha in order to obtain the relief requested in his Motion for Relief from Stay. *See infra*, pp. 13-15.  Based on Luck's representations, the Delaware Bankruptcy Court entered an Order on August 7, 2020 granting Luck's Motion for Relief from Stay on the following conditions:

> IT IS FURTHER ORDERED that ***Mr. Luck shall not file a proof of claim against the Debtor or its estate and is hereby deemed to waive, and shall be forever barred from obtaining, any recovery against the Debtor or its bankruptcy estate on account of any claim or claims (as defined in the Bankruptcy Code) against the Debtor or its bankruptcy estate in this bankruptcy case***; provided, however, that Mr. Luck expressly reserves (i) the right to pursue the Declaratory Judgment Relief [a declaration of whether or not Alpha properly terminated Mr. Luck for cause under the Employment Contract] and (ii) any and all defenses to any claims that may be asserted against him by the Debtor, or its successor in interest, including, but not limited to, the defenses of set-off and/or recoupment.

Alpha Bankruptcy, ECF No. 355 at 2-3 (emphasis added), Ex. C.  Luck subsequently amended his complaint in the Connecticut Action to add Alpha as a nominal defendant.  *See* Connecticut Action, ECF No. 94.

**F.**     **Alpha, Through its Plan Administrator, Files the Avoidance Action Against Luck**

On April 11, 2022, Alpha, through its Plan Administrator, filed the Avoidance Action against Luck.  *See* Avoidance Action, ECF No. 1.  Pursuant to the Avoidance Action, Alpha seeks to recoup at least some portion of the "Compensation" that was already paid to Luck by Alpha under the Employment Contract prior to his termination.  *See generally id.*

Specifically, the Plan Administrator alleges that Alpha made "transfers . . . totaling not less than $11,099,387.54" to Luck pursuant to the Employment Contract, which Luck has failed to return despite the Plan Administrator's request.  *Id.* at ¶¶ 27-31.  Accordingly, the Plan Administrator asserts claims against Luck for:  (i) constructive fraudulent transfer under Bankruptcy Code § 548, as well as under Delaware state law through Bankruptcy Code § 544; and (ii) preferences under Bankruptcy Code § 547.  *See id.* at ¶¶ 32-61.

In each such claim, the Plan Administrator makes clear that he seeks to recoup monies that *Alpha* already paid to Luck.  *See id.* at ¶¶ 35, 40 ("The Debtor [Alpha] made the Transfers to or for the benefit of Luck."); *see also id.* at ¶¶ 48, 56 (substantially similar allegations).  The Plan Administrator further makes clear that his claims against Luck are brought "on behalf of the Debtor's [i.e., Alpha's] estate and its creditors."  *Id.* at ¶ 33.

**G.**     **Luck Seeks to Prevent the Delaware Bankruptcy Court from Hearing the Avoidance Action**

While the Connecticut Action was still pending, on April 19, 2022, Luck attempted to stop the Avoidance Action by filing in this Court an Emergency Motion to Enjoin Defendant Alpha from Circumventing the Court's Jurisdiction.  *See* Connecticut Action, ECF No. 448.  Specifically,

Luck urged this Court to "enjoin Alpha, including its Plan Administrator, from pursuing the claims contained in its recently filed [Avoidance Action] in Delaware under the 'first filed' rule . . . ." *Id.* at 2.  Luck argued that "the [Avoidance Action] is nothing more than an attempt by Alpha, and its principal creditor Mr. McMahon, to obtain the proverbial 'second bite of the apple' at Mr. Luck's expense by asserting claims that rely on many of the same factual ground that Alpha has previously litigated in this Court." *Id.* at 1.  Following the settlement of the Connecticut Action in June 2022, this Court denied as moot Luck's motion.  *See* Connecticut Action, ECF No. 487.

In addition to filing the Emergency Motion to Enjoin Defendant Alpha from Circumventing the Court's Jurisdiction in this Court, on May 17, 2022, Luck also sought to prevent the Delaware Bankruptcy Court from hearing the Avoidance Action by filing in that court a motion for withdrawal of the reference, a motion for transfer of venue, and a motion to stay proceedings pending adjudication of Luck's motion for withdrawal of the reference.  *See* Avoidance Action, ECF Nos. 10-16.

## H.   Luck's Third Party Complaint Against McMahon Seeks Indemnity for Alpha's Claims Against Luck

On August 17, 2022, Luck filed the Third Party Complaint against McMahon.  *See* Avoidance Action, ECF No. 27.  Luck's Third Party Complaint admits that the Avoidance Action "seeks to avoid and recover . . . payments that [Alpha] made to Luck under the Employment Contract," *id.* at ¶ 24, and contends that "Luck has incurred and will continue to incur expenses and costs, including attorneys' fees, in connection with the Avoidance Action."  *Id.* at ¶ 28.

Luck then alleges that his Employment Contract with Alpha contains an indemnification provision for claims brought against him by a third party, which requires Alpha to indemnify him, and that McMahon supposedly guaranteed Alpha's performance of that indemnity under the Guaranty.  *Id.* at ¶¶ 14-17.  On this basis, Luck claims that, "[p]ursuant to the Guaranty, McMahon

is required to indemnify Luck as set forth in the Employment Contract." *Id.* at ¶ 37.  Luck seeks a declaration and judgment that McMahon is liable under the Guaranty to indemnify Luck for any previously-paid salary or bonuses which are avoided or recovered as either fraudulent transfers or preferential transfers as well as for any interest and expenses, including attorneys' fees, Luck incurs in the Avoidance Action. *Id.* at ¶¶ 26, 37.  By his own admission, therefore, Luck admits that he is seeking indemnification from McMahon for monies Luck was ***already paid by Alpha***. Thus, Luck essentially is asking McMahon to pay him a second time for monies he admittedly was already paid by Alpha, even though McMahon's Guaranty was only for "the due and punctual payment" of Alpha's obligations to Luck.

I.    **The Delaware Bankruptcy Court Grants Luck's Motion for Transfer of Venue**

On January 27, 2023, the Delaware Bankruptcy Court granted Luck's motion for transfer of venue and, pursuant to 28 U.S.C. §§ 1404(a) and 1412, transferred venue of the Avoidance Action, including Luck's Third Party Complaint against McMahon, to this Court. *See* Avoidance Action, ECF No. 56.

### III.    <u>ARGUMENT</u>

A.    **Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a complaint that fails to "state a claim upon which relief can be granted" must be dismissed.  The Supreme Court has articulated a two-pronged analysis for determining whether a complaint survives a motion to dismiss.  First, the court must ignore "conclusory statements" and "legal conclusions" couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Second, the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Where

a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted).

On a motion to dismiss, courts can look "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Here, Luck's Third Party Complaint fails to assert a plausible claim that McMahon is liable under the Guaranty based on the plain language of the Employment Contract, the Guaranty, and other undisputed documentary records.

**B.    McMahon Has No Indemnity Obligation to Luck Under the Guaranty Unless and Until Luck Establishes that Alpha Has An Obligation to Him and Breached that Obligation Under the Employment Contract**

As noted above, this Court previously held that Alpha was a necessary and indispensable party to the Connecticut Action under Fed. R. Civ. P. 19.  As a predicate to that holding, this Court interpreted McMahon's obligations under the Guaranty, ruling:

> Mr. McMahon only guaranteed "the due and punctual payment and performance by [Alpha] of all its agreements and obligations . . . ."
>
> **To prevail against Mr. McMahon as a guarantor [under the Guaranty],** *Mr. Luck thus would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract.*

Connecticut Action, ECF No. 79 at 13 (bold emphasis added; first brackets in original).

Given the Court's ruling, McMahon cannot have any indemnity obligation to Luck under the Guaranty with respect to the Avoidance Action unless and until Alpha (i) has an indemnity

obligation to Luck with respect to the Avoidance Action brought by Alpha, and (ii) breaches that obligation.  Luck's Third Party Complaint fails as a threshold matter because Luck has not and cannot seek indemnity from Alpha in the Avoidance Action, much less establish that Alpha must indemnify Luck against its own lawsuit and breached that obligation.  Alpha has no indemnity obligation to Luck with respect to the Avoidance Action under the Employment Contract for the reasons set forth below and consequently Luck's Third Party Complaint against McMahon likewise is barred as a matter of law.

**C. Alpha Has Not Breached Any Indemnity Obligation to Luck With Respect to the Avoidance Action Under the Employment Contract**

**1. Luck Is Barred From Asserting Any Claim Against Alpha**

Luck long ago waived any claim or right to recovery against Alpha in connection with his Motion for Relief from Stay.  As noted above, in order to obtain the relief requested in his Motion for Relief from Stay, Luck expressly represented to the Delaware Bankruptcy Court that he would not pursue a claim or otherwise seek monetary relief against Alpha:

- "Even if Mr. Luck is successful in obtaining a declaration that Alpha did not properly terminate him for cause, ***Mr. Luck will not be seeking to recover any monetary judgment against Alpha*** and will not be pursuing a claim in this case." Alpha Bankruptcy, ECF No. 295 at 2 (emphasis added), Ex. E hereto.

- "***Because no recovery will be sought against Alpha,*** lifting the stay will not cause any prejudice to Alpha, its bankruptcy estate, or its creditors." Alpha Bankruptcy, ECF No. 295 at 2 (emphasis added), Ex. E hereto.

- "Importantly, ***Mr. Luck does not seek to enforce any judgment against Alpha***. . . . As Mr. Luck is not seeking to collect any judgment from Alpha or pursue a claim in this bankruptcy case, there is no risk to Alpha or its bankruptcy estate of 'great prejudice' in being joined as a party in the [Connecticut] Action." Alpha Bankruptcy, ECF No. 295 at 7 (emphasis added), Ex. E hereto.

- "***Mr. Luck does not seek to enforce any judgment against Alpha, and, thus, is not seeking any payment from the estate to the detriment of other creditors***." Alpha Bankruptcy, ECF No. 295 at 8 (emphasis added), Ex. E hereto.

In reliance on Luck's representations in his Motion for Relief from Stay, the Delaware

Bankruptcy Court granted Luck's Motion for Relief from Stay and specifically ordered that Luck

had waived, and was forever barred from obtaining, any recovery against Alpha or its estate in the

Alpha Bankruptcy, as follows:

> IT IS FURTHER ORDERED that ***Mr. Luck shall not file a proof
> of claim against the Debtor or its estate and is hereby deemed to
> waive, and shall be forever barred from obtaining, any recovery
> against the Debtor or its bankruptcy estate on account of any claim
> or claims (as defined in the Bankruptcy Code) against the Debtor
> or its bankruptcy estate in this bankruptcy case***; provided,
> however, that Mr. Luck expressly reserves (i) the right to pursue the
> Declaratory Judgment Relief [a declaration of whether or not Alpha
> properly terminated Mr. Luck for cause under the Employment
> Contract] and (ii) any and all defenses to any claims that may be
> asserted against him by the Debtor, or its successor in interest,
> including, but not limited to, the defenses of set-off and/or
> recoupment.

Alpha Bankruptcy, ECF No. 355 at 2-3 (emphasis added), Ex. C hereto.[3]

Given Luck's representations to the Delaware Bankruptcy Court, and pursuant to the

Delaware Bankruptcy Court's Order that Luck is "deemed to waive, and shall be forever barred

from obtaining, any recovery against the Debtor or its bankruptcy estate on account of any claim

or claims (as defined by the Bankruptcy Code) against the Debtor or its bankruptcy estate in this

bankruptcy case," Luck is precluded from even seeking indemnity from Alpha under the

indemnification provision of the Employment Contract for any avoided and recovered transfers or

any interest and expenses, including attorneys' fees, incurred in connection with the Avoidance

Action.  Indeed, no doubt because of the Delaware Bankruptcy Court's Order prohibiting him from

---

[3]     Under the Delaware Bankruptcy Court's Order, the only "claim" that Luck preserved
against Alpha was the Declaratory Judgment Relief [a declaration of whether or not Alpha properly
terminated Luck for cause under the Employment Contract] that Luck asserted in the Connecticut
Action.  The preservation of that claim is irrelevant here.

doing so, Luck has not even asserted an indemnity claim against Alpha, let alone obtained a judgment which establishes that Alpha would owe him any monies that Alpha recovers in the Avoidance Action, all of which would be needed to invoke the Guaranty.

### 2. *Alpha's* Avoidance Action Is Not Subject to the Indemnification Provision of Luck's Employment Contract with *Alpha*

#### a. The Indemnification Provision of Luck's Employment Contract with *Alpha* Only Applies to Actions Brought By A "Third Party"

As noted above, the indemnification provision of Luck's Employment Contract *with Alpha* only applies to "any action, arbitration, investigation or other proceeding brought by any *third party* against Luck."  Avoidance Action, ECF No. 27-1 at 4-5 (emphasis added).  Fatally, the Avoidance Action was *not* brought by a third party; it was brought by Peter Hurwitz, solely in his capacity as *Alpha*'s Plan Administrator.  Accordingly, and as the Complaint in the Avoidance Action makes clear, the Avoidance Action asserts Alpha's claims against Luck.  *See supra*, pp. 9-11.

#### b. Luck Has Repeatedly Admitted that the Avoidance Action Was Brought By Alpha and Not A Third Party

Luck has repeatedly admitted — indeed advocated — in both the Connecticut Action and the Delaware Bankruptcy Court that "Alpha and the Plan Administrator are one and the same" and the Avoidance Action asserts *Alpha's* claims against Luck.  *See* Connecticut Action, ECF No. 448-1 at 1 n.1; Connecticut Action, ECF No. 448 at 1.  As noted above, in response to the filing of the Avoidance Action, Luck filed an "Emergency Motion to Enjoin *Defendant Alpha* from Circumventing the Court's Jurisdiction" (emphasis added) — directly equating the Plan Administrator's filing of the Avoidance Action on behalf of Alpha with Defendant Alpha in the Connecticut Action.  Significantly, in urging this Court to enjoin the Avoidance Action in the Delaware Bankruptcy Court, Luck made the following additional admissions:

- "***Alpha, through its Plan Administrator, filed*** [the Avoidance Action] against Mr. Luck . . . ."  Connecticut Action, ECF No. 448 at 1 (emphasis added).

- "The bottom line is that the [Avoidance Action] is nothing more than an attempt ***by Alpha***, and its principal creditor Mr. McMahon, to obtain the proverbial 'second bite of the apple' at Mr. Luck's expense ***by asserting claims that rely on many of the same factual grounds that Alpha has previously litigated in this Court***."  Connecticut Action, ECF No. 448 at 1 (emphasis added).

- "***Alpha and the Plan Administrator are one and the same*** . . . . While Section 5.4.3 [of the Plan] gives the Plan Administrator the power to prosecute the retained causes of action, it does not prevent Alpha from prosecuting the claims or in any way change the fact that ***the claims are Alpha's.***"  Connecticut Action, ECF No. 448-1 at 1 n.1 (italicized emphasis in original; bold emphasis added).

- "Moreover, ***any alleged claims in the [Avoidance Action] are compulsory counterclaims which Alpha should have brought in this [Connecticut Action] long ago***."  Connecticut Action, ECF No. 448-1 at 2 (emphasis added).

- "Therefore, ***the Court should enjoin Alpha from prosecuting its claims in the Delaware Bankruptcy Court under the 'first filed' rule***, at least until the trial of this action is concluded, ***because the parties and issues in both proceedings are the same*** (or, at a minimum, 'not so different.')."  Connecticut Action, ECF No. 448-1 at 8 (emphasis added).

- "Having voluntarily appeared before this Court, ***Alpha should not now be permitted to pursue claims based on many of the same underlying issues in another court***."  Connecticut Action, ECF No. 448-1 at 9 (emphasis added).

- "Alpha's contractual arrangements should not require Mr. Luck to litigate the same underlying issues ***against Alpha in two separate courts*** located in different states and falling within different federal circuits."  Connecticut Action, ECF No. 448-1 at 10 (emphasis added).

- "***Alpha's bankruptcy claims and its counterclaims in this Court*** embrace the same issues."  Connecticut Action, ECF No. 455 at 5 (emphasis added).

Finally, and perhaps most conclusively, Luck argued in the Connecticut Action that:

> Naming the Opposition the 'Opposition of Peter Hurwitz, Plan Administrator of Alpha Entertainment LLC' ***does not magically change the Opposition from being Alpha's***.  ***The Plan Administrator acts on behalf of and in the name of Alpha and advances Alpha's claims, defenses, and arguments.***  Mr. Hurwitz cannot act for Alpha in any capacity other than as its Plan Administrator.  Additionally, the [Plan Administrator's] Opposition

> does not deny that **the Plan Administrator and Alpha are the same party.  Therefore . . . "Alpha and the Plan Administrator are one and the same."**

Connecticut Action, ECF No. 455 at 1 n.1 (emphasis added).

Luck made similar admissions in the briefing on his motions filed in the Delaware Bankruptcy Court to stay the Avoidance Action pending adjudication of his motion for withdrawal of the reference and to transfer venue.  Specifically, Luck again made clear his position that the Avoidance Action was brought by Alpha, the same party as in the Connecticut Action.  Such admissions included the following:

- "**[T]he Debtor's role in that action** was more expansive.  **In the Connecticut Action, the Debtor brought and actively litigated** counterclaims against Luck for breach of contract pursuant to the Employment Contract and the confidentiality provisions of the CNNA, and breach of fiduciary duties. . . . Thus, **the Debtor was a real party in interest** and stood to receive a substantial benefit from the counterclaims asserted in the Connecticut Action."  Avoidance Action, ECF No. 29 at 1 (emphasis added).

- "**The Debtor was a defendant in the Connecticut Action**, and **in that action the Debtor brought and heavily litigated** counterclaims against Luck for breach of contract pursuant to the Employment Contract and the CNNA, and breach of fiduciary duties owed to the Debtor."  Avoidance Action, ECF No. 30 at 3 (emphasis added).

Most recently, while successfully persuading the Delaware Bankruptcy Court to transfer the Avoidance Action to this Court, Luck's bankruptcy counsel once more admitted at oral argument that:

- "There's a number of factors here that I'm just going to highlight very briefly at the opening, that differentiates this case from the garden-variety avoidance action that we're so used to deal[ing] with.  **One, there's the existence of multi-year litigation in the Connecticut District Court involving these same parties:  Mr. Luck, Alpha, Mr. McMahon.**"  Avoidance Action, 1/23/23 Tr. at 5 (emphasis added), Ex. F hereto.

- "**[T]here were two years of experience that was gained by the District Court in Connecticut overseeing [the] same parties** . . . ."  Avoidance Action, 1/23/23 Tr. at 16 (emphasis added), Ex. F hereto.

Luck is now estopped from advancing a position contrary to the representations he made to two different federal courts. *See Zedner v. United States*, 547 U.S. 489, 504 (2006) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). "[J]udicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Adelphia Recovery Trust v. HSBC Bank USA*, 634 F.3d 678, 695-96 (2d. Cir. 2011). Each of the elements of judicial estoppel undeniably applies here.

**Clearly Inconsistent.** Having repeatedly admitted that the Avoidance Action was brought by Alpha, which by definition is not a "third party" to the Employment Contract, it would be "clearly inconsistent" for Luck to now attempt to argue that the claims by Alpha in the Avoidance Action are "brought by [a] third party" to attempt to invoke the indemnification provision of the Employment Contract.

**Luck's Inconsistent Position was Adopted by the Delaware Bankruptcy Court.** In granting Luck's motion to transfer, the Delaware Bankruptcy Court noted that "[t]he procedural posture of the claims between and among Mr. Luck, Alpha Entertainment and Vince McMahon play heavily in my analysis." Avoidance Action, 1/27/23 Tr. at 5, Ex. G hereto. The Delaware Bankruptcy Court went on to expressly adopt Luck's position in analyzing the factors to consider on a venue transfer motion:

> a plaintiff's choice of forum is generally given great weight, but here debtor [Alpha] chose to bifurcate its claims against Mr. Luck and

18

> bring some in Connecticut and some in Delaware.  As reflected, in the following factors, this choice created the scenario in which the Connecticut court gained knowledge on the relationship between the parties and the relevant contracts, including Mr. Luck's performance on his employment contract.

*Id.* at 7, Ex. G hereto.  The Delaware Bankruptcy Court further echoed Luck's position in the

oral argument on Luck's motion for transfer of venue:

- "The estate claims were absolutely litigated in the Connecticut litigation . . . .  The debtor was up there.  The debtor was up there — an estate representative was up there.  I totally disagree with that."  Avoidance Action, 1/23/23 Tr. at 41-42, Ex. F hereto.

- "There are some unique aspects of this case, including, in my mind, the fact that the estate chose to pursue certain of its claims against Mr. Luck elsewhere and so that a judge did gain some familiarity with the underlying factual situation."  Avoidance Action, 1/23/23 Tr. at 67, Ex. F hereto.

Based on the foregoing, it is indisputable that the Delaware Bankruptcy Court adopted Luck's

position in granting Luck's motion for transfer of venue.

**Luck Would Derive an Unfair Advantage Against the Party Seeking Estoppel.**  Given

Luck's repeated admissions that the Avoidance Action was brought by Alpha – and not any third

party to the Employment Contract – in successfully moving to transfer the Avoidance Action to

this Court, Luck has no right to indemnity from Alpha under the Employment Contract and thus

no right to indemnity from McMahon under the Guaranty.  If Luck were allowed to pursue his

indemnification claim against McMahon despite and contrary to these prior admissions, it would

be the height of strategic gamesmanship and manifest unfairness — precisely what the judicial

estoppel doctrine is intended to prevent.

3. **Alpha Has No Indemnity Obligation to Luck Under the Employment Contract For Monies that Alpha Already Paid to Luck As Compensation In Accordance With the Employment Contract**

The indemnification provision of Luck's Employment Contract cannot be interpreted to

require Alpha to indemnify Luck for salary and bonuses that Alpha ***already*** paid him under the

Employment Contract, which Luck may now be ordered to reimburse Alpha in the Avoidance Action. Luck's position would nullify Alpha's rights under the Bankruptcy Code, and epitomizes circular logic — in essence Luck contends that Alpha would be contractually obligated to pay-back to Luck all monies that it otherwise proves a right to recover. Such an interpretation would be nonsensical, and therefore impermissible, under Connecticut law (which governs the interpretation of the Employment Contract). *See Welch v. Stonybrook Gardens Coop., Inc.*, 158 Conn. App. 185, 198 (2015) ("We will not construe a contract's language in such a way that it would lead to an absurd result."); *Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Inv'rs, L.P.*, 97 Conn. App. 541, 560 (2006) ("A court should avoid reading a contract in a way that renders it illogical.").

Moreover, the Avoidance Action seeks the repayment to Alpha of monies that Alpha already paid Luck in accordance with the Employment Contract. Specifically, the Avoidance Action seeks the recovery of some or all of the $11,099,387.54 that Alpha paid Luck as salary and bonuses in accordance with the Employment Contract prior to his termination. Whether Luck is ordered to reimburse Alpha $11,099,387.54 or some lesser amount, the monies at issue already were paid to Luck. Alpha cannot be required, under the guise of the indemnification provision of the Employment Contract, effectively to pay Luck twice. Nor can McMahon be required under the Guaranty to pay Luck monies that Alpha already paid him. As discussed above, this Court ruled that McMahon "only guaranteed 'the due and punctual payment and performance by [Alpha] of all its agreements and obligations.'" Connecticut Action, ECF No. 79 at 13. Because the Avoidance Action seeks to recover monies that Alpha already paid Luck in "the due and punctual payment and performance by [Alpha]" of its agreements and obligations under the Employment Contract (Avoidance Action, ECF No. 27-1 at 7), McMahon has no further obligations with respect

to such salary and bonuses under the Guaranty.

The clear intent and purpose of the indemnification provision was to apply if Luck had to defend against, and pay, third parties other than Alpha for something he did wrong to those third parties.  That is simply not the case here.  Alpha certainly did not agree to indemnify Luck against suits that Alpha brought against him, a proposition which is nonsensical on its face.  Indeed, Luck's interpretation would mean that Alpha effectively could never sue Luck for anything related to his employment because Alpha would be required to pay-back to him under the indemnification provision any monies that Alpha proves an entitlement to recover.

### IV.    CONCLUSION

For the foregoing reasons, Third Party Defendant Vincent K. McMahon respectfully requests that Third Party Plaintiff Oliver Luck's Complaint be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

THIRD PARTY DEFENDANT VINCENT K. MCMAHON

By: */s/ Jerry S. McDevitt*
Jerry S. McDevitt  (*pro hac vice*)
Curtis B. Krasik  (*pro hac vice*)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 21, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)