**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re: | Chapter 11 |
| ALPHA ENTERTAINMENT LLC,[1] | U.S. Bankruptcy Court for the District of Delaware, Case No. 20-10940 (LSS) |
| Debtor. | |
| PETER HURWITZ, solely in his capacity as Plan Administrator of Alpha Entertainment LLC, | Adversary Proceeding |
| Plaintiff, | Case No. 3:23-cv-00118-VAB |
| OLIVER LUCK, | |
| Defendant. | |
| OLIVER LUCK, | |
| Third-Party Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, | |
| Third-Party Defendant. | |
| | MARCH 14, 2023 |

**THIRD-PARTY PLAINTIFF OLIVER LUCK'S OPPOSITION TO THIRD-PARTY
DEFENDANT VINCENT K. MCMAHON'S MOTION TO DISMISS**

---

[1] The last four digits of the Debtor's federal tax identification number are 7778.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii

I.       BACKGROUND ............................................................................................................ 1

     A.     Luck's Employment Contract and the Guaranty ....................................................... 1

     B.     The Bankruptcy Case ............................................................................................... 4

     C.     Prior Litigation Against McMahon and Alpha ......................................................... 5

     D.     This Adversary Proceeding ...................................................................................... 9

II.     LEGAL STANDARD .................................................................................................... 12

III.    ARGUMENT ................................................................................................................. 13

     A.     McMahon's Liability Under the Guaranty Is Independent From and Not
            Derivative of Alpha's Liability Under the Employment Contract ....................... 13

     B.     If the Plan Administrator Avoids and Recovers Transfers That Alpha Made
            to Luck Under the Employment Contract, McMahon's Liability Under the
            Guaranty Will Be Restored ................................................................................... 17

     C.     Luck Has Properly Stated a Claim for Declaratory Relief .................................. 19

     D.     Luck Has Stated Valid Claims Against McMahon with Respect to McMahon's
            Obligations Under the Guaranty in Connection with the Indemnification
            Provision .............................................................................................................. 21

IV.     CONCLUSION .............................................................................................................. 35

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*,
    644 F. App'x 10 (2d Cir. 2016) ..................................................................................14

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    390 B.R. 80 (S.D.N.Y. 2008) *aff'd*, 379 F. App'x 10 (2d Cir. 2010)..............................27

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    379 F. App'x 10 (2d Cir. 2010) ..................................................................................27

*Allstate Ins. Co. v. Martinez*,
    No. 3:11CV574 VLB, 2012 WL 1379666 (D. Conn. Apr. 20, 2012) ..............................20

*Anthem Sports, LLC v. Under the Weather, LLC*,
    320 F. Supp. 3d 399 (D. Conn. 2018) ..........................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................12

*Batchelar v. Interactive Brokers, LLC*,
    422 F. Supp. 3d 502 (D. Conn. 2019)..........................................................................12

*Bates v. Long Island R. Co.*,
    997 F.2d 1028 (2d Cir. 1993)...............................................................................30, 31

*Bonnie & Co. Fashions v. Bankers Tr. Co.*,
    18 F. Supp. 2d 297 (S.D.N.Y. 1998)............................................................................31

*Brass Mill Ctr., LLC v. Subway Real Est. Corp.*,
    214 Conn. App. 379 (2022) ........................................................................................13

*Credit Suisse First Bos. Mortg. Cap. LLC v. Cohn*,
    No. 03 CIV. 6146 (DC), 2004 WL 1871525 (S.D.N.Y. Aug. 19, 2004)....................16, 17

*Edwards Fam. P'ship, L.P. v. Dickson*,
    821 F.3d 614 (5th Cir. 2016) ......................................................................................14

*Green v. Welsh*,
    956 F.2d 30 (2d Cir. 1992)..........................................................................................17

*In re Adelphia Recovery Tr.*,
    634 F.3d 678 (2d Cir. 2011)........................................................................................29

*In re Cybergenics Corp.*,
    226 F.3d 237 (3d Cir. 2000)............................................................28

*In re Davis*,
    165 B.R. 327 (Bankr. N.D. Ga. 1994) ..........................................25

*In re Dreier LLP*,
    No. 08-15051 SMB, 2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12, 2012).....................19

*In re FAH Liquidating Corp.*,
    572 B.R. 117 (Bankr. D. Del. 2017) ..............................................26

*In re Frontier Ins. Grp., Inc.*,
    598 B.R. 87 (S.D.N.Y. 2019) ..........................................................35

*In re Jackson*,
    No. 15-21233 (AMN), 2017 WL 2371111 (Bankr. D. Conn. May 30, 2017)...................16

*In re Jie Xiao*,
    608 B.R. 126 (Bankr. D. Conn. 2019) ............................................27

*In re Kelton Motors Inc.*,
    121 B.R. 166 (Bankr. D. Vt. 1990)...........................................25, 26

*In re Kip & Andrea Richards Fam. Farm & Ranch, LLC*,
    608 B.R. 219 (Bankr. D. Neb. 2019) ............................................25

*In re MS Grand, Inc.*,
    No. 11-10200-RGM, 2014 WL 2795239 (Bankr. E.D. Va. June 19, 2014).....................18

*In re Murphy*,
    331 B.R. 107 (Bankr. S.D.N.Y. 2005) .......................................27, 28

*In re O.E.M./Erie, Inc.*,
    405 B.R. 779 (Bankr. W.D. Pa. 2009) ............................................25

*In re Omnicom Grp., Inc. Sec. Litig.*,
    No. 02 CIV. 4483 WHP MHD, 2007 WL 2376170 (S.D.N.Y. Aug. 10, 2007)...............31

*In re O.P.M. Leasing Servs., Inc.*,
    32 B.R. 199 (Bankr. S.D.N.Y. 1983)...............................................26

*In re Refco Sec. Litig.*,
    No. 07 MDL 1902 JSR, 2010 WL 5129011 (S.D.N.Y. Dec. 14, 2010) ............................27

*In re Skytec, Inc.*,
    610 B.R. 14 (Bankr. D.P.R. 2019) ....................................................................25

*In re SNTL Corp.*,
    571 F.3d 826 (9th Cir. 2009) .........................................................................18

*In re S. Side House, LLC*,
    470 B.R. 659 (Bankr. E.D.N.Y. 2012)..............................................................16

*In re Toronto*,
    165 B.R. 746 (Bankr. D. Conn. 1994) ...............................................................19

*In re Tronox Inc.*,
    503 B.R. 239 (Bankr. S.D.N.Y. 2013) ..............................................................19

*Matter of Robison*,
    665 F.2d 166 (7th Cir. 1981) .........................................................................25

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)........................................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*,
    903 F.2d 109 (2d Cir. 1990).....................................................................30, 31

*Sorbera v. New York Life Ins. Co.*,
    No. 3:17-CV-01653 (AVC), 2018 WL 3814522 (D. Conn. Aug. 1, 2018).....................12

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van
    Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34 (2d Cir. 2005) ...............................30

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000)...........................................................................17

*Wallace Hardware Co. v. Abrams*,
    223 F.3d 382 (6th Cir. 2000) .........................................................................18

## **Statutes and Rules**       **Page(s)**

11 U.S.C. § 524...........................................................................................16, 17

11 U.S.C. § 544..............................................................................................27

11 U.S.C. § 550..............................................................................................27

28 U.S.C. § 2201............................................................................................19

Del. Code Ann. Tit. 6, § 1304 .......................................................................................27

**Secondary Sources**                                                                **Page(s)**

38A C.J.S. Guaranty § 105 ............................................................................................16

72 C.J.S. Principal and Surety § 129 .............................................................................18

Restatement (Third) of Suretyship & Guaranty § 70 (1996) .........................................18

Defendant and Third-Party Plaintiff Oliver Luck ("Luck") respectfully submits this memorandum of law in opposition to the Motion to Dismiss Third Party Complaint filed by Third-Party Defendant Vincent K. McMahon ("McMahon") on February 21, 2023 [Dkt. No. 26] (together with its accompanying memorandum of law, the "Motion").  As set forth more fully herein, McMahon's Motion should be denied.

## I.    BACKGROUND

### A.    Luck's Employment Contract and the Guaranty

1.    Alpha Entertainment LLC ("Alpha") was formed for the purpose of operating the XFL Professional Football League ("XFL").  (Bankr. D. Del., Adv. Proc. No. 22-50256, Dkt. No. 27 [hereinafter, "Third Party Compl."], ¶ 9.)

2.    Alpha was principally owned and capitalized by McMahon.  (*Id.* ¶ 10.)

3.    On May 30, 2018, Luck and Alpha entered into that certain Contract for Employment as Commissioner and CEO (the "Employment Contract").  (*Id.* ¶ 11 & Ex. 1.) Pursuant to the Employment Contract, Luck was to serve as the Commissioner and CEO of the to-be-formed XFL.  (*Id.* ¶ 12 & Ex. 1.)  The Employment Contract had an initial term of July 1, 2018 through June 30, 2023.  (*Id.*, Ex. 1, at 3.)[2]

4.    In exchange for his obligations under the Employment Contract, Luck was to receive, *inter alia*, the following compensation:  (i) a base salary of $5,000,000 payable in substantially equal semi-monthly installments (the "Base Salary"); and (ii) guaranteed annual bonuses of $2,000,000 if Luck continued to be employed on the last day of each July 1 – June 30

---

[2] For docket filings, page number citations shall be to the ECF-stamped pagination.  With respect to copies of docket filings attached as exhibits to this Opposition, page number citations shall be to the original ECF-stamped pagination.

contract year (the "Guaranteed Annual Bonuses" and together with the Base Salary, "Monetary Compensation").  (*Id.*)

5.     In the event Luck's employment was terminated by Alpha without Cause,[3] the Employment Contract provides that Luck would be entitled to receive a lump sum cash payment equal to:

> (i) the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination

(the "Severance Payment").  (*Id.*, Ex. 1, at 4.)  However, upon a termination for Cause, the Employment Contract provides that "Luck will only be entitled to be paid for previously accrued salary and any vested employee benefits."  (*Id.*)

6.     The Employment Contract contains an indemnification provision that provides as follows (the "Indemnification Provision"):

> To the fullest extent permitted by law, both during and after the Term, Alpha shall pay all reasonable expenses incurred by Mr. Luck and any judgments or fines rendered or levied against Mr. Luck in any action, arbitration, investigation or other proceeding brought by any third party against Mr. Luck (whether or not the XFL, Alpha or any of their affiliates is a party to that action) that arises from or otherwise relates to the course or scope of Mr. Luck's employment, unless such action or other proceeding arises directly from Mr. Luck's gross negligence or willful misconduct. Payments authorized hereunder shall include reasonable amounts paid and expenses incurred in connection with any settlement of any such action or threatened action, provided Alpha is consulted with respect to, and has preapproved (which approval may not be unreasonably withheld or conditioned), any such settlement. This paragraph shall survive any expiration or termination of this Contract.

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Employment Contract, which is annexed as Exhibit 1 to the Third Party Compl.

(*Id.*, Ex. 1, at 5–6.)

7.      To induce Luck into entering the Employment Contract and to guarantee Alpha's

obligations thereunder, McMahon executed that certain Guaranty dated May 30, 2018 (the

"Guaranty").  (*Id.* ¶ 15 & Ex. 1, at 7.)

8.      Pursuant to the Guaranty, McMahon "irrevocably and unconditionally guarantees,

as primary obligor and not merely as a surety," the due and punctual payment and performance

by Alpha of all of its agreements and obligations under the Employment Contract.  (*Id.* ¶ 16 &

Ex. 1, at 7.)  The Guaranty provides that it is "a guaranty of payment and not of collection."  (*Id.*)

The Guaranty further provides:

> The obligations of [McMahon] hereunder shall be absolute, unconditional,
> continuing and irrevocable and shall remain in full force and effect until the
> full performance by [Alpha] of all of its agreements and its obligations
> under the Transaction Documents,[4] irrespective of the validity, regularity or
> enforceability of any Transaction Document, any amendment or other
> modification or change thereto, the absence of any action to enforce the
> same, any waiver or consent by [Luck] or [Alpha] with respect to any
> provision of any Transaction Document, the recovery of any judgment
> against [Alpha] or any action to enforce the same, any dissolution,
> liquidation or termination of [Alpha], or any other circumstances that may
> otherwise constitute a legal or equitable discharge or defense of
> [McMahon], all of which are hereby waived by [McMahon]. [McMahon]
> further waives any right of set-off or counterclaim it may have against
> [Luck] arising from any other obligations that [Luck] may have to [Alpha]
> or [McMahon]. This Guaranty shall be binding upon [McMahon] and shall
> inure to the benefit of [Luck] and, in each case, their respective estates,
> heirs, executors, legatees, devisees, personal representatives, successors and
> permitted assigns.

(*Id.*, Ex. 1, at 7.)

---

[4] The Guaranty defines the term "Transaction Documents" as both the Employment Contract and the
"Equity Agreements," which is defined in the Employment Contract.

9.      In connection with the Employment Contract, Luck and Alpha also entered into that certain Confidentiality, Non-Solicitation and Non-Competition Agreement dated May 30, 2018 (the "CNNA").  (*Id.*, Ex. 1, at 8–13.)

10.      The Employment Contract, the Guaranty, and the CNNA all provide that they shall be governed by and construed in accordance with the laws of the State of Connecticut without regard to its choice of law rules.  (*Id.* ¶ 18 & Ex. 1, at 5, 7, 13.)

11.      On April 9, 2020, Alpha wrongfully terminated Luck's employment as Commissioner and CEO of the XFL, allegedly for Cause.  (*Id.* ¶ 20.)

**B.      The Bankruptcy Case**

12.      On April 13, 2020 (the "Petition Date"), just days after terminating Luck's employment, Alpha commenced the above-captioned Chapter 11 bankruptcy case, which remains pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as Case No. 20-10940-LSS (the "Bankruptcy Case").

13.      On December 10, 2020, Alpha filed in the Bankruptcy Case the *2nd Amended Chapter 11 Plan of Alpha Entertainment LLC* [Bankruptcy Case, Dkt. No. 583] (the "Plan") and the *Notice of Filing of Revised Plan Supplement for the 2nd Amended Chapter 11 Plan of Alpha Entertainment LLC* [Bankruptcy Case, Dkt. No. 585] (the "Plan Supplement").  The Plan Supplement includes, *inter alia*, a Plan Administrator Agreement between Alpha and Peter Hurwitz for the purpose of providing plan administrator services to Alpha.  (Bankruptcy Case, Dkt. No. 585, at Ex. A.)  True and accurate copies of the Plan and the Plan Supplement are attached hereto as Exhibits A and B, respectively.

14.      On December 11, 2020, the Bankruptcy Court entered in the Bankruptcy Case an order [Bankruptcy Case, Dkt. No. 592] (the "Confirmation Order"), which confirmed the Plan as amended, modified or supplemented by the Plan Supplement.  The effective date of the Plan was

December 22, 2020.  A true and accurate copy of the Confirmation Order is attached hereto as Exhibit C.

15.     Peter Hurwitz (the "Plan Administrator") is the Plan Administrator appointed pursuant to the Plan and approved pursuant to the Confirmation Order.  (Dkt. No. 592, at 18.)

### C.     Prior Litigation Against McMahon and Alpha

16.     On April 16, 2020, Luck commenced an action in the United States District Court for the District of Connecticut to recover approximately $23.8 million in Monetary Compensation owed as a result of his wrongful termination under the Employment Contract, which was assigned Civil Action No. 3:20-cv-00516-VAB (the "Prior Action").  (*See generally* Prior Action, Dkt. No. 145 (Second Amended Complaint).)

17.     Initially, the Prior Action was brought solely against McMahon pursuant to the Guaranty.  However, on June 26, 2020, this Court (Bolden, J.) held that Alpha was an indispensable party to the Prior Action.  (Prior Action, Dkt. No. 79, at 13–14.)[5]  As a result, Luck sought relief from the Bankruptcy Court to join Alpha as a defendant in the Prior Action.  (Bankruptcy Case, Dkt. No. 295.)  On August 7, 2020, the Bankruptcy Court entered its *Agreed Order Granting Oliver Luck's Motion for Relief from Stay to Join Alpha Entertainment LLC in Connecticut Proceeding* ("Lift Stay Order"), which lifted the automatic stay "for the sole purpose of allowing Oliver Luck to join Alpha as a defendant in the [Prior] Action for the sole purposes of (i) seeking a declaration of whether or not Alpha properly terminated Mr. Luck for cause under the Employment Contract . . . and (ii) seeking a monetary judgment against Vincent K. McMahon under the Guaranty."  (Bankruptcy Case, Dkt. No. 355.)  A true and accurate copy of the Lift Stay Order is attached hereto as Exhibit E.

---

[5] A true and accurate copy of this order, (Prior Action, Dkt. No. 79), is attached hereto as Exhibit D.

18.     After the Bankruptcy Court's entry of the Lift Stay Order, Luck sought and was granted leave by this Court to summon Alpha into the Prior Action, and to serve it with an amended complaint.  (Prior Action, Dkt. Nos. 91, 93.)  Alpha was served with a summons and amended complaint on November 18, 2020.  (Prior Action, Dkt. Nos. 94–96.)

19.     On November 17, 2020, the Bankruptcy Court entered an order, pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019, approving a settlement and stipulation between Alpha in its capacity as debtor-in-possession, the Official Committee of Unsecured Creditors of Alpha, and McMahon, whereby, *inter alia*:  (i) Alpha "assigns all of its claims against Luck arising from or related to the Connecticut Action [(i.e., the Prior Action)] to McMahon (collectively, the 'Estate Claims'); provided, however, that Estate Claims shall not include recovery actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of title 11 of the United States Code;" (ii) McMahon agrees to assert the Estate Claims on behalf of, and in the name of, Alpha as counter-claims against Luck in the Prior Action and to undertake the defense of the claims of Luck against Alpha in the Prior Action at McMahon's sole cost and expense; and (iii) to the extent McMahon recovers on the Estate Claims on behalf of Alpha, Alpha (or its successor) will be entitled to 67% of such collected recovery, which will not be reduced by McMahon's litigation costs associated therewith, or by McMahon's litigation costs associated with defending Alpha against claims asserted by Luck.  (*See generally* Bankruptcy Case, Dkt. No. 532.)  A true and accurate copy of this order is attached hereto as Exhibit F.

20.     On January 22, 2021, Luck filed a Second Amended Complaint in the Prior Action, (Prior Action, Dkt. No. 145), which remained the operative complaint throughout the remaining pendency of that action.  A true and accurate copy of the Second Amended Complaint in the Prior Action is attached hereto as Exhibit G.

21.     As against McMahon, Luck asserted claims in the Prior Action for declaratory relief, breach of the Guaranty, and breach of the implied duty of good faith and fair dealing. (Prior Action, Dkt. No. 145, at Counts Two, Three & Four.)  The declaratory relief claim against McMahon sought (i) a declaration that McMahon has waived all defenses and discharges to Luck's enforcement of the Guaranty, and (ii) a declaration that McMahon's obligations under the Guaranty are as primary obligor such that McMahon is primarily responsible to Luck for all amounts owed to him under the Employment Contract.  (*Id.* ¶¶ 32–33.)  McMahon denied that Luck was entitled to the relief sought in the Second Amended Complaint.  (Prior Action, Dkt. No. 338 (McMahon's answer and affirmative defenses to Second Amended Complaint), at 9.)

22.     As against Alpha, Luck asserted a claim in the Prior Action for declaratory relief, seeking (i) a declaration that Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause, and (ii) a declaration that, in violation of the implied duty of good faith and fair dealing, Alpha wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause.  (Prior Action, Dkt. No. 145, ¶¶ 28–29.)  Alpha denied that Luck was entitled to the relief sought in the Second Amended Complaint, alleged that Luck was terminated for Cause, and, in its affirmative defenses, alleged that Luck materially breached the Employment Contract and the CNNA.  (Prior Action, Dkt. No. 339 (Alpha's answer and affirmative defenses to Second Amended Complaint), at 1, 9.)

23.     Alpha brought counterclaims against Luck in the Prior Action for breach of contract pursuant to the Employment Contract and the confidentiality provisions of the CNNA, and breach of fiduciary duties.  (*See generally* Prior Action, Dkt. No. 153 (Alpha's amended counterclaims).)[6]  In the Prior Action, Alpha sought, among other things, disgorgement of profits

---

[6] A true and accurate copy of Alpha's amended counterclaims, (Prior Action, Dkt. No. 153), is attached hereto as Exhibit H.

and forfeiture of compensation previously paid to Luck under the Employment Contract.  (*Id.* at 18.)  Luck asserted a number of affirmative defenses to Alpha's counterclaims.  (Prior Action, Dkt. No. 166 (Luck's answer and affirmative defenses to the Debtor's amended counterclaims), ¶¶ 123–67.)

24.     On April 19, 2022, following the commencement of the Avoidance Action (defined below), Luck filed in the Prior Action a motion entitled *Plaintiff's Emergency Motion to Enjoin Defendant Alpha from Circumventing the Court's Jurisdiction* [Prior Action, Dkt. No. 448] (the "Injunction Motion").  McMahon (on behalf of himself and Alpha) filed an opposition to the Injunction Motion, as did the Plan Administrator.  (Prior Action, Dkt. Nos. 450 (McMahon and Alpha's Opposition) & 453 (Plan Administrator's Opposition).)  In response thereto, Luck filed a reply entitled *Plaintiff's Reply in Support of Emergency Motion to Enjoin Defendant Alpha from Circumventing the Court's Jurisdiction* [Prior Action, Dkt. No. 455] (the "Injunction Reply").  True and accurate copies of the Injunction Motion, McMahon and Alpha's opposition, the Plan Administrator's opposition, and the Injunction Reply are attached hereto as Exhibits I, J, K, and L, respectively.

25.     On June 23, 2022, three weeks before jury selection and trial was scheduled to begin in the Prior Action, Luck, McMahon, and Alpha stipulated to dismissal of the Prior Action with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  (Prior Action, Dkt. No. 484.)  A true and accurate copy of that stipulation of dismissal is attached hereto as Ex. M.

26.     On June 29, 2022, this Court entered an order dismissing the Prior Action with prejudice pursuant to the parties' stipulation.  (Prior Action, Dkt. No. 486.)  Concurrently therewith, this Court entered an order denying pending motions as moot, including Luck's

Injunction Motion.  (Prior Action, Dkt. No. 487.)  True and accurate copies of those orders are attached hereto as Exhibits N and O, respectively.

>    **D.     This Adversary Proceeding**

27.     On April 11, 2022, the Plan Administrator commenced the above-captioned adversary proceeding (the "Avoidance Action") in the Bankruptcy Court by filing a Complaint against Luck dated April 11, 2022 (the "Avoidance Complaint").  While this adversary proceeding was pending in the Bankruptcy Court, it was assigned Adv. Proc. No. 22-50256-LSS ("Del. Adv. Proc.").

28.     In the Avoidance Complaint, the Plan Administrator seeks, *inter alia*, to avoid and recover as preferential and constructively fraudulent transfers payments of Monetary Compensation that Alpha made to Luck under the Employment Contract before the Petition Date.  (*See generally* Del. Adv. Proc., Dkt. No. 1 ("Compl.").)  Specifically, the Plan Administrator asserts the following claims against Luck in the Avoidance Complaint:  in Count One, constructive fraudulent transfer under 11 U.S.C. §§ 544(b), 550 and Del. Code Ann. Tit. 6, § 1304(a)(2) *et seq.*; in Count Two, constructive fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B) and 550; in Count Three, preferential transfers within one year of the Petition Date under 11 U.S.C. §§ 547 and 550; and in Count Four, preferential transfers within ninety days of the Petition Date under 11 U.S.C. §§ 547 and 550.[7]

29.     Prior to the commencement of the Avoidance Action, on April 6, 2022, Luck's counsel advised counsel for the Plan Administrator and McMahon that, under the Guaranty, McMahon would be liable for any payments made by Alpha before the Petition Date in accordance with the Employment Contract that were avoided and recovered as either fraudulent

---

[7] Luck reserves all of his rights with regard to the Plan Administrator's claims, including whether they properly state a claim for relief.

transfers or preferential transfers.  (Third Party Compl., ¶ 26.)  By an email response on the same date, counsel for McMahon rejected that position.  (*Id.*)

30.     After commencement of the Avoidance Action, on August 8, 2022, Luck sent to McMahon's counsel a copy of the Avoidance Complaint and demanded that McMahon, pursuant to the terms of the Guaranty, pay or reimburse Luck for any sums awarded against Luck in the Avoidance Action, as well as Luck's reasonable costs and expenses, including attorneys' fees, incurred in connection with the Avoidance Action.  (*Id.* ¶ 27.)  Luck required that McMahon confirm in writing that he will pay and/or reimburse Luck for such amounts by no later than August 15, 2022.  (*Id.*)  Notwithstanding Luck's demand, McMahon has failed to confirm that he will pay and/or reimburse Luck for (i) any sums awarded against Luck in the Avoidance Action, and (ii) his reasonable costs and expenses, including attorneys' fees, incurred in connection with the Avoidance Action.  (*Id.*)

31.     Luck has incurred and will continue to incur expenses and costs, including attorneys' fees, in connection with the Avoidance Action.  (*Id.* ¶ 28.)

32.     On May 17, 2022, Luck filed in this adversary proceeding (i) a motion for withdrawal of the reference [Del. Adv. Proc., Dkt. Nos. 10 & 12] (the "Motion for Withdrawal"), (ii) a motion to transfer venue of this adversary proceeding from the Bankruptcy Court to the United States District Court for the District of Connecticut [Del. Adv. Proc., Dkt. Nos. 13 & 14] (the "Motion to Transfer Venue"), and (iii) a motion to stay proceedings pending adjudication of the Motion for Withdrawal [Dkt. Nos. 15 & 16] (the "Stay Motion").  On August 12, 2022, the Plan Administrator filed oppositions to the Motion to Transfer Venue and the Stay Motion.  (Del. Adv. Proc., Dkt. Nos. 25 & 26).  In response thereto, on August 19, 2022, Luck filed a reply in further support of the Motion to Transfer Venue [Del. Adv. Proc., Dkt. No. 29] (the "Reply in

<u>Support of Motion to Transfer Venue</u>") and a reply in further support of the Stay Motion [Del. Adv. Proc., Dkt. No. 30] (the "<u>Stay Motion Reply</u>").

33.     On August 17, 2022, Luck impleaded McMahon as a third party defendant to this adversary proceeding.  (Del. Adv. Proc., Dkt. Nos. 27 & 28.)  In the Third Party Complaint, Luck has asserted the following claims:  (i) in Count I, declaratory judgment under 28 U.S.C. § 2201(a); and (ii) in Count II, contractual indemnification.  (*See generally* Third Party Compl.)

34.     Specifically, with respect to Luck's claim for declaratory judgment, Luck seeks, *inter alia*, judicial declarations that (i) to the extent the Plan Administrator avoids and recovers any transfers made by Alpha to Luck under the Employment Contract (e.g., Monetary Compensation), McMahon is obligated under the Guaranty to indemnify Luck for such avoided and recovered transfers; (ii) McMahon is obligated under the Guaranty to indemnify Luck for any interest and expenses awarded to the Plan Administrator; (iii) McMahon is obligated under the Guaranty to indemnify Luck for all reasonable expenses, including reasonable attorneys' fees, incurred by Luck in connection with the Avoidance Action; and (iv) McMahon is obligated under the Guaranty to indemnify Luck for any judgments or fines rendered or levied against Luck in the Avoidance Action.  (*Id.* ¶¶ 30–33 & p. 9–10.)

35.     With respect to Luck's claim for contractual indemnification, Luck seeks, *inter alia*, a money judgment under the Guaranty against McMahon (i) for any transfers of Monetary Compensation that the Plan Administrator avoids and recovers from Luck, and (ii) for Luck's reasonable costs and expenses, including reasonable attorneys' fees, in connection with the Avoidance Action.  (*Id.* ¶¶ 38–39 & p. 9–10.)

36.     On January 27, 2023, the Bankruptcy Court granted Luck's Motion to Transfer Venue to this Court after finding, among other things, that practical considerations weighed in

favor of transfer as a result of this Court (Bolden, J.) presiding over the Prior Action for over two years prior to its dismissal.  (Del. Adv. Proc., Dkt. No. 56.)

      37.     On February 21, 2023, McMahon filed the Motion pursuant to Fed. R. Civ. P. 12(b)(6), seeking the dismissal of Luck's Third Party Complaint.  (*See generally* Motion, Dkt. No. 26.)

## II.    LEGAL STANDARD

     "A motion to dismiss assesses the legal feasibility of the complaint, but it does not assay the weight of the evidence which might be offered in support thereof."  *Sorbera v. New York Life Ins. Co.*, No. 3:17-CV-01653 (AVC), 2018 WL 3814522, at *2 (D. Conn. Aug. 1, 2018) (cleaned up).  "When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff."  *Batchelar v. Interactive Brokers, LLC*, 422 F. Supp. 3d 502, 508 (D. Conn. 2019).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims."  *Id.* at 509 (quoting *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990)).

     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In its review of a 12(b)(6) motion to dismiss, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.'"  *Sorbera*, 2018 WL 3814522, at *3 (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

III.    **ARGUMENT**

A.    **McMahon's Liability Under the Guaranty Is Independent From and Not Derivative of Alpha's Liability Under the Employment Contract**

McMahon's Motion argues that Luck's claims against McMahon are premature until such time as Luck establishes that (i) Alpha has an obligation to indemnify Luck with respect to the claims brought by the Plan Administrator in this adversary proceeding, and (ii) Alpha has breached that obligation.  (Motion, Dkt. No. 26-1, § III(B).)  McMahon then goes on to argue that Alpha has no obligation to indemnify Luck and, therefore, Luck's Third Party Complaint fails to state a valid claim.  (*Id.* at § IV.)  However, contrary to McMahon's arguments are the clear and unambiguous terms of the Guaranty, under which McMahon's liability is independent and in no way derivative of Alpha's liability.

Under Connecticut law, well established principles of contract law provide as follows:

> A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. ... [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.

*Brass Mill Ctr., LLC v. Subway Real Est. Corp.*, 214 Conn. App. 379, 387 (2022) (quoting *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498 (2000)). When a contract "is clear and unambiguous, the contract is to be given effect according to its terms. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms."  *Id.* (quoting *Tallmadge Bros.*, 252 Conn. at 498).

The Guaranty provides that "McMahon hereby irrevocably and unconditionally guarantees, **as primary obligor** and not merely as a surety, the due and punctual payment a[n]d

performance by [Alpha] of all of its agreements and obligations under the Transaction

Documents," which include the Employment Agreement.  (Third Party Compl., Ex. 1, at Ex. A

¶ 1 (emphasis added).)  The Guaranty further provides that McMahon's obligations thereunder

are absolute and unconditional, irrespective of the liability of Alpha under the Employment

Contract.  (*Id.* at Ex. A ¶ 2.)  Specifically, the Guaranty states:

> The obligations of [McMahon] hereunder shall be ***absolute, unconditional, continuing and irrevocable*** and shall remain in full force and effect until the full performance by [Alpha] of all of its agreements and its obligations under the Transaction Documents, ***irrespective of*** the validity, regularity or enforceability of any Transaction Document, . . . the absence of any action to enforce the same, . . . ***the recovery of any judgment against [Alpha] or any action to enforce the same***, any dissolution, liquidation or termination of [Alpha], or any other circumstances that may otherwise constitute a legal or equitable discharge or defense of [McMahon], all of which are hereby waived by [McMahon].

(*Id.* at Ex. A ¶ 2 (emphasis added).)  Thus, McMahon personally guaranteed to Luck that he

would satisfy Alpha's obligations under the Employment Contract as primary obligor, without

Luck first obtaining a judgment against Alpha, and McMahon expressly waived all defenses to

enforcement.

Notably, McMahon's Motion does not allege that the Guaranty is ambiguous,

unenforceable, or invalid, but only that McMahon cannot be held liable as a guarantor unless and

until Luck obtains a judgment against Alpha.  However, "where a guaranty provides that it is

absolute and unconditional irrespective of any lack of validity or enforceability of the agreement

or any other circumstance which might otherwise constitute a defense, the guarantor is precluded

from asserting a defense as to the existence of a valid underlying debt."  *136 Field Point Circle*

*Holding Co., LLC v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12 (2d Cir. 2016) (cleaned up);

*accord Edwards Fam. P'ship, L.P. v. Dickson*, 821 F.3d 614, 617–18 (5th Cir. 2016) (rejecting

argument that guarantor cannot be held liable until lenders show that obligor is liable, and ruling

"[w]e enforce the unambiguous language of the guaranty contracts, . . . which requires that [the guarantor] fulfill the obligations under the notes regardless of any outcome of the bankruptcy proceedings or challenges to the underlying obligation").  Here, the clear and unambiguous language of the Guaranty—which states that McMahon is liable as primary obligor without Luck having to obtain a judgment first against Alpha—is fatal to McMahon's arguments.

Further, McMahon's Motion takes out of context this Court's ruling in the Prior Action that Alpha was a necessary party to that action.  (*See* Motion, Dkt. No. 26-1, at 16.)  In the Prior Action, this Court ruled:

> [B]ecause Alpha had terminated Mr. Luck for cause, even if allegedly wrongfully, the Guaranty also may have ended, because Mr. Luck was not entitled to any additional payment beyond 'previously accrued salary and any vested employee benefits.' Employment Contract at 3.

> To prevail against Mr. McMahon as a guarantor, Mr. Luck thus would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract.

(Ex. D, Prior Action, Dkt. No. 79, at 13.)  Based on that ruling, McMahon argues that he is liable under the Guaranty to pay Luck for any transfers avoided and recovered by the Plan Administrator only if Luck first establishes Alpha's liability with respect to those transfers.  (*See* Motion, Dkt. No. 26-1, at 16–17.)  However, in contrast to the claims in this adversary proceeding, Luck was seeking in the Prior Action to hold McMahon liable under the Guaranty for payment of the Severance Payment.  (*See id.* at 13–15.)  Under the Employment Contract, the Severance Payment obligation was triggered only upon Alpha's termination of Luck without Cause.  (Third Party Compl., Ex. 1, at 4.)  As this Court found in the Prior Action, if "Alpha had terminated Mr. Luck for cause, even if allegedly wrongfully, the Guaranty also may have ended, because Mr. Luck was not entitled to any additional payment beyond 'previously accrued salary

and any vested employee benefits.'" (Ex. D, Prior Action, Dkt. No. 79, at 13 (quoting Employment Contract at 3 (i.e., Third Party Compl., Ex. 1, at 4)).) Critically, this Court recognized in the Prior Action that regardless of whether Alpha terminated Luck for Cause, Alpha had an obligation under the Employment Contract to pay Luck for previously accrued salary and any vested employee benefits. (*See id.*) Because the Plan Administrator seeks to avoid and recover transfers of salary and benefits that had accrued prior to Luck's termination, (*see* Compl. ¶ 27 & Ex. 2), Alpha's obligation to Luck under the Employment Contract with respect to those transfers is not even in dispute.

Moreover, Alpha's bankruptcy proceedings and the Bankruptcy Court's Lift Stay Order do not affect McMahon's obligations under the Guaranty. *See Credit Suisse First Bos. Mortg. Cap. LLC v. Cohn*, No. 03 CIV. 6146 (DC), 2004 WL 1871525, at *8 (S.D.N.Y. Aug. 19, 2004) ("A discharge of liability pursuant to the bankruptcy laws generally does not affect a guarantor's liability and leaves a creditor free to pursue collection from a guarantor." (collecting cases)); *In re Jackson*, No. 15-21233 (AMN), 2017 WL 2371111, at *5 (Bankr. D. Conn. May 30, 2017) (holding that a bankruptcy plan's discharge injunction does not immunize third parties); *In re S. Side House, LLC*, 470 B.R. 659, 676 (Bankr. E.D.N.Y. 2012) ("A debtor's bankruptcy case does not relieve a guarantor of its liability under the guaranty."); 38A C.J.S. Guaranty § 105 ("[T]he discharge of debt pursuant to a bankruptcy proceeding involving the principal debtor does not in turn discharge the guarantor."). "[W]hile a bankruptcy case may result in the discharge of the debtor's obligations or impair the claim of a creditor, a non-debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its rights against the non-debtor guarantor outside of the bankruptcy case." *In re S. Side House, LLC*, 470 B.R. at 673. To wit, Section 524(e) of title 11 of the United States Code (the "Bankruptcy Code") provides that the

"discharge of a debt of the debtor does not affect the liability of any other entity . . . for such debt."  11 U.S.C. § 524(e); *see Terwilliger v. Terwilliger*, 206 F.3d 240, 247 (2d Cir. 2000) (rejecting contention that a stipulation entered into by a debtor in bankruptcy, which discharged the debtor's obligations, resolved a third party's liability on a claim); *Green v. Welsh*, 956 F.2d 30, 33 & n.1 (2d Cir. 1992) (concluding that the language of subsections (a) and (e) of Section 524 "reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit"); *Credit Suisse*, 2004 WL 1871525, at *8 ("As the legislative history explains, '[s]ubsection [e] provides the discharge of the debtor does not affect co-debtors or guarantors." (quoting *In re Keene Corp.*, 162 B.R. 935, 947 (Bankr. S.D.N.Y. 1994)).  Indeed, Section 524 even "permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer."  *Green*, 956 F.2d at 35.

Therefore, it is clear that McMahon's liability under the Guaranty is absolute and unconditional, and is independent from Alpha's liability under the Employment Contract. Alpha's bankruptcy proceedings and the Bankruptcy Court's Lift Stay Order have no effect on McMahon's obligations.

> **B.   If the Plan Administrator Avoids and Recovers Transfers That Alpha Made to Luck Under the Employment Contract, McMahon's Liability Under the Guaranty Will Be Restored**

Luck's Third Party Complaint asserts against McMahon a claim for declaratory judgment, and a claim for contractual indemnification.  Both of those claims are based, in part, on the Monetary Compensation provisions of the Employment Contract, and McMahon's irrevocable and unconditional guarantee of Alpha's obligations thereunder pursuant to the Guaranty.  (*See generally* Third Party Compl.)

In the Motion, McMahon argues that he cannot "be required under the Guaranty to pay Luck monies that Alpha already paid him," and "[b]ecause the Avoidance Action seeks to

recover monies that Alpha already paid Luck in 'the due and punctual payment and performance by [Alpha]' of its agreements and obligations under the Employment Contract . . . , McMahon has no further obligations with respect to such salary and bonuses under the Guaranty."  (Motion, Dkt. No. 26-1, at 24.)  This is incorrect.

McMahon ignores the well-established principle that "guarantors must make good on their guaranties following avoidance of payments previously made by their principal debtors." *See In re SNTL Corp.*, 571 F.3d 826, 836 (9th Cir. 2009) (quoting *In re Robinson Bros. Drilling, Inc.*, 6 F.3d 701, 704 (10th Cir. 1993)); *accord* Restatement (Third) of Suretyship & Guaranty § 70 (1996) ("When a secondary obligation is discharged in whole or part by performance by the principal obligor or another secondary obligor, . . . the secondary obligation revives to the extent that the obligee, under a legal duty to do so, later surrenders that performance or collateral, or the value thereof, as a preference or otherwise.").  Indeed, "courts have uniformly held that a payment of a debt that is later set aside as an avoidable preference does not discharge a guarantor of his obligation to repay that debt."  *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 408 (6th Cir. 2000) (collecting cases).  This is because "[a] preferential payment is deemed by law to be no payment at all."  *In re SNTL Corp.*, 571 F.3d at 836 (quoting *In re Herman Cantor Corp.*, 15 B.R. 747, 750 (Bankr. E.D. Va. 1981)); *accord* 72 C.J.S. Principal and Surety § 129.  The same is true with respect to fraudulent conveyances.  *See, e.g.*, *In re MS Grand, Inc.*, No. 11-10200-RGM, 2014 WL 2795239, at *2 (Bankr. E.D. Va. June 19, 2014) ("In this case, if the transaction is void [as a fraudulent conveyance], it is as if the landlord had not been paid the rent due to it under the lease and the landlord would be entitled to look to the guarantor.").

If the Plan Administrator avoids and recovers pre-Petition Date transfers of Monetary Compensation that Alpha made to Luck under the Employment Contract, those transfers will be

treated as if they had never occurred.  *See In re Tronox Inc.*, 503 B.R. 239, 330 (Bankr. S.D.N.Y. 2013) ("By definition, a preference involves a transfer on account of an antecedent debt, and there is no question as to the reinstatement of the debt if there is a recovery by the trustee or debtor."); *In re Dreier LLP*, No. 08-15051 SMB, 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012) ("Section 502(h) is based on the principle of fraudulent transfer law that the return of a fraudulent transfer restores the parties to the status quo."); *In re Toronto*, 165 B.R. 746, 754 & n.9 (Bankr. D. Conn. 1994) (noting that "a preferential transfer which the debtor subsequently avoids . . . is treated under the code as though it had never occurred").  Thus, the avoidance and recovery of any transfers that Alpha made to Luck before the Petition Date would reinstate the debt under the Employment Contract and McMahon's absolute and unconditional liability under the Guaranty.

### C.  Luck Has Properly Stated a Claim for Declaratory Relief

Luck's Third Party Complaint properly states a claim against McMahon for declaratory judgment pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act").  The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The only requirement to state a claim for relief for declaratory judgment is to allege an actual controversy.

"There is no 'facile, all-purpose standard to police the line between declaratory judgment actions which satisfy the case or controversy requirement and those that do not.'"  *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 408 (D. Conn. 2018) (quoting *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008)).  Instead, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Luck has properly pleaded a claim for declaratory judgment.  The Third Party Complaint alleges sufficient facts to show that there is an actual controversy between Luck and McMahon regarding McMahon's liability under the Guaranty, which, given the Avoidance Action, is of sufficient immediacy and reality to warrant the issuance the declaratory relief requested in the Third Party Complaint.  (*See* Third Party Compl., ¶¶ 11–33.)  Indeed, this adversary proceeding presents a typical declaratory judgment action similar to those involving an insurer's indemnification obligation.  As with such cases, the interests and obligations of a guarantor, "when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement." *See Allstate Ins. Co. v. Martinez*, No. 3:11CV574 VLB, 2012 WL 1379666, at *9 (D. Conn. Apr. 20, 2012) (quoting *Empire Fire & Marine Ins. Co. v. Elrac, Inc.*, No. 04 CIV. 10315(GEL), 2006 WL 3734308, at *3 (S.D.N.Y. Dec. 18, 2006)).

McMahon attempts to confuse the issue of whether Luck has properly stated a claim upon which relief can be granted by failing to articulate the appropriate standard (or, indeed, any standard).  Rather than presenting a colorable argument for dismissal under Fed. R. Civ. P. 12(b)(6), McMahon's Motion seemingly argues the merits of the underlying claim and, in turn, only more fully demonstrates the existence of an actual controversy between Luck and McMahon.  McMahon has not met his burden to show a failure to state a claim for declaratory judgment, and, therefore, the Motion must be denied.

**D.    Luck Has Stated Valid Claims Against McMahon with Respect to McMahon's Obligations Under the Guaranty in Connection with the Indemnification Provision**

The Indemnification Provision of the Employment Contract provides, in pertinent part, that to "the fullest extent permitted by law . . . Alpha shall pay all reasonable expenses incurred by Mr. Luck and any judgments or fines rendered or levied against Mr. Luck in any action, arbitration, investigation or other proceeding brought by any third party against Mr. Luck . . . that arises from or otherwise relates to the course or scope of Mr. Luck's employment." (*Id.*, Ex. 1, at 5.)  In contending that Luck cannot seek indemnification from McMahon under the Guaranty for reasonable expenses incurred by Luck or any judgments or fines rendered or levied against Luck in the Avoidance Action, McMahon argues that the Indemnification Provision does not apply because the Avoidance Action was brought by Alpha and not a third party, and that Luck is judicially estopped from arguing that the Avoidance Action was not brought by Alpha. (Motion, Dkt. No. 26-1, at 18–23.)[8]  These arguments are unavailing.

It is undeniable that the Avoidance Action was brought by the Plan Administrator, and it cannot reasonably be disputed that the Plan Administrator is a third party under the terms of the Employment Contract.  Indeed, both the Plan Administrator and McMahon have repeatedly distinguished the Plan Administrator from Alpha, and the causes of action that the Plan Administrator has brought pursuant to the Avoidance Complaint are creditor causes of action that could not have been brought by Alpha for its own benefit.  Lastly, Luck cannot be estopped

---

[8] To be clear, Luck only seeks to enforce McMahon's guaranty of the Indemnification Provision to recover his attorney's fees and costs in the Avoidance Action, as well as to recover any interest or expenses awarded to the Plan Administrator in connection with a judgment in his favor.  McMahon's obligation to pay Luck for any avoided transfers of his Monetary Compensation is based on McMahon's guarantee that such payments will be made under the Employment Contract and, therefore, is unrelated to the Indemnification Provision.

from advocating that the Plan Administrator is a third party because none of the requisite

elements for judicial estoppel are present.

McMahon has not demonstrated that Luck's Third Party Complaint fails to state a claim

for either declaratory judgment or contractual indemnification in connection with the

Indemnification Provision.

### i.     The Avoidance Action Was Brought by a Third Party, the Plan Administrator

The Avoidance Complaint is quite clear that it was brought by a third party:  Peter

Hurwitz, the Plan Administrator.  The Plan Administrator is the named plaintiff in the Avoidance

Action, and the Avoidance Complaint alleges:  "Peter Hurwitz, solely in his capacity as Plan

Administrator . . . of Alpha Entertainment LLC . . . , as and for **his** Complaint for Avoidance of

Fraudulent Transfers and Avoidances of Preferences . . . against Defendant Oliver Luck . . . ,

respectfully states as follows . . . ."  (Compl., p. 1 (emphasis added).)  The Avoidance Complaint

further alleges that: "Plaintiff is the Plan Administrator appointed pursuant to the Second

Amended Chapter 11 Plan of Alpha Entertainment LLC ('Plan') and confirmed by order entered

December 11, 2020."  (*Id.* ¶ 2.)  And, under the Plan, "the ***Plan Administrator*** was vested with

authority to, among other things, commence this adversary proceeding." (*Id.* ¶ 2 (emphasis

added).)

In the Avoidance Complaint, it is the Plan Administrator that is asserting the causes of

action in his name and in his capacity as the Plan Administrator—not as Alpha.  (*Id.* ¶ 33

(alleging in Count I that "Plaintiff brings this claim on behalf of the Debtor's estate and its

creditors under the Delaware Uniform Fraudulent Transfer Act"); *id.* ¶ 44 (alleging in Count II

that "Plaintiff is entitled to a judgment pursuant to sections 548(a)(1)(B), 550(a), and 551 of the

Bankruptcy Code"); *id.* ¶¶ 53 & 61 (alleging in Counts III and IV that it is the "Plaintiff" who

may recover the allegedly preferential transfers).  In particular, in Count I, the Plan Administrator alleges that the "[t]he Debtor has one o[r] more creditors *for whom the Plaintiff can act*."  (*Id.* ¶ 34 (emphasis added).)  Consistent with the foregoing, in the Avoidance Complaint's prayer for relief, Peter Hurwitz, as the Plan Administrator, is the party seeking a judgment against Luck.  (*Id.* p. 11.)

Furthermore, the Plan Administrator has stated repeatedly that he is asserting the claims set forth in the Avoidance Complaint as the Plan Administrator.  In opposing Luck's Motion to Transfer Venue, the Plan Administrator repeatedly stated that *he* (not Alpha) brought the claims in this action.  (Del. Adv. Proc., Dkt. No. 25, p. 5 ("Peter Hurwitz . . . , in his capacity as Plan Administrator of Alpha Entertainment LLC . . . filed a Complaint . . . against Oliver Luck . . . ."), p. 6 ("Hurwitz seeks to recover transfers paid to Luck . . . ."), pp. 6–7 ("Hurwitz has alleged that there were issues with Luck's performance . . . .").)  The Plan Administrator made similar statements in opposing Luck's Stay Motion.  (Del. Adv. Proc., Dkt. No. 26, at 5–6 (stating "Peter Hurwitz . . . , in his capacity as Plan Administrator of Alpha Entertainment LLC . . . filed a Complaint . . .  against Oliver Luck" and "Hurwitz seeks to recover transfers paid to Luck").)

Similarly, in both this adversary proceeding and the Prior Action, the Plan Administrator has purposefully distinguished himself from Alpha.  For example, in opposing Luck's Motion to Transfer Venue, the Plan Administrator explained that Alpha's non-bankruptcy claims were transferred to McMahon to be litigated in the Prior Action on behalf of Alpha, but that the Plan Administrator's involvement in the Prior Action was "limited to filing an Opposition to a motion filed by Oliver Luck . . . where Luck sought to have that court prohibit prosecution of the adversary proceeding *I filed* against him" (referencing the present adversary proceeding).  (Del. Adv. Proc., Dkt. No. 26-1, ¶ 2 (emphasis added).)  In addition, the Plan Administrator

acknowledged that Luck and McMahon reached a settlement in the Prior Action, but noted that "***[n]either Hurwitz***[, in his capacity as Plan Administrator,] ***nor the Debtor*** were parties to the settlement agreement." (Del. Adv. Proc., Dkt. No. 26, at 8 (emphasis added).)

In the Prior Action, in the Plan Administrator's aforementioned sole filing, the Plan Administrator again argued that the avoidance causes of action could only be asserted by him. (*See generally* Ex. K, Prior Action, Dkt. No. 453.)  In particular, the Plan Administrator stated that the "avoidance actions claims . . . are property of the Alpha Entertainment LLC . . . bankruptcy estate and ***can only be pursued by the Plan Administrator on behalf of the bankruptcy estate***." (*Id.* at 5 (emphasis added); *accord id.* at 7 ("The Plan Administrator is entitled to recover under the fraudulent transfer and preference theories even if Mr. Luck's job performance was exemplary.").)  The Plan Administrator similarly acknowledged that he is bringing these avoidance claims "to enhance the recovery to unsecured creditors of the bankruptcy estate." (*Id.* at 5; *accord id.* at 6.)  The Plan Administrator also was clear that he, in his capacity as Plan Administrator, was a different party than Alpha when McMahon was prosecuting Alpha's counterclaims in Alpha's name in the Prior Action. *See id.* at 8 (stating that the counterclaims brought by McMahon on behalf of Alpha were being brought by a "different party than the Plan Administrator").

McMahon also has recognized the distinction between the Plan Administrator and Alpha. For instance, in April 2022 in the Prior Action, McMahon explained his understanding that, while he obtained the right to pursue Alpha's non-bankruptcy related causes of action against Luck, "any right to prosecute [the avoidance claims at issue in the Avoidance Action] has always been with the Plan Administrator" and that this adversary proceeding "filed by the Plan

Administrator" exclusively asserts those avoidance causes of action.  (Ex. J, Prior Action, Dkt. No. 450, at 2.)

Not surprisingly, bankruptcy trustees and plan administrators are commonly considered to be third parties vis-à-vis a debtor.  *See, e.g.*, *Matter of Robison*, 665 F.2d 166, 169–70 (7th Cir. 1981) (holding that exception in state statute governing transfers of motor vehicles excluding its application to transfer "as between the parties" did not apply to trustee under Bankruptcy Act, because while debtor was a "party" to the transaction, "the trustee, as a hypothetical lien creditor of the bankrupt as of the date of bankruptcy, occupies a position separate and distinct from the bankrupt, [and, thus,] this language does not apply to him"); *In re Skytec, Inc.*, 610 B.R. 14, 37 (Bankr. D.P.R. 2019) (noting that "the debtor's proposal to appoint a third party plan administrator should dispel, at least in part, any fear of conflicts of interest as it relates to the pursuit of avoidance actions and excessive compensation"); *In re Kip & Andrea Richards Fam. Farm & Ranch, LLC*, 608 B.R. 219, 225 (Bankr. D. Neb. 2019) ("Third-party standing under section 1123(b)(3)(B) is commonly granted to trustees of liquidating trusts, plan administrators and unsecured creditors' committees, who were appointed in the confirmed Chapter 11 plan."); *In re O.E.M./Erie, Inc.*, 405 B.R. 779, 788 (Bankr. W.D. Pa. 2009) ("Flexibility in the heightened pleading standard of Fed. R. Civ. P. 9(b) is 'required because it is often the Trustee, a third party outsider to the fraudulent transaction, that must plead fraud on second hand knowledge for the benefit of the estate and all of its creditors.'" (quoting *In re Glob. Link Telecom Corp.*, 327 B.R. 711, 717 (Bankr. D. Del. 2005)); *In re Davis*, 165 B.R. 327 (Bankr. N.D. Ga. 1994) (holding that Chapter 7 trustee was third party vis-à-vis the debtor, and, thus, exception in statute governing transfer of motor vehicles  for "parties" to the transfer did not apply to trustee in connection with debtor's pre-petition transfer of vehicle); *In re Kelton*

*Motors Inc.*, 121 B.R. 166, 187 (Bankr. D. Vt. 1990) ("This Court will insist upon the stringent

standards set by the Courts in *Stearns*, *Decker*, *supra*, where a party to alleged fraudulent

transaction has first hand knowledge of such fraud, . . . except where a trustee, a third party

outsider to the fraudulent transaction, must rely on second hand knowledge." (citations omitted));

*In re O.P.M. Leasing Servs., Inc.*, 32 B.R. 199, 202 (Bankr. S.D.N.Y. 1983) ("This Court is

mindful of the more liberal approach to fraud pleading in bankruptcy cases predicated upon the

fact that it is often the trustee, a third party, who is pleading fraud on secondhand information.").

Thus, the plain meaning of "third party" in the Guaranty includes a bankruptcy plan

administrator, and that is how the parties in this adversary proceeding have considered the Plan

Administrator.

> ### ii.    The Causes of Action That the Plan Administrator Is Bringing Are Creditor Causes of Action That Could Not Have Been Brought by Alpha

As further evidence that the Plan Administrator constitutes a third party and that

McMahon is obligated under the Guaranty to indemnify Luck as set forth in the Indemnification

Provision, the causes of action the Plan Administrator is bringing pursuant to the Avoidance

Complaint are creditor causes of action that could not have been brought by Alpha for its own

benefit.  Specifically, the Plan Administrator is bringing claims under 11 U.S.C. §§ 544(b), 547,

548(a)(1)(B), and 550, as well as the Delaware Uniform Fraudulent Transfer Act, Del. Code

Ann. Tit. 6, §§ 1304(a)(2) et seq.[9]  Each of the Plan Administrator's claims can be brought solely

---

[9] While the Avoidance Complaint alleges a violation of Delaware's Uniform Fraudulent Transfer Act, Del. Code Ann. Tit. 6, § 1304(a)(2) et seq., under a choice of law analysis it is quite likely that Connecticut's adoption of the Uniform Fraudulent Transfer Act, and the case law interpreting its provisions, would apply.  *Cf. In re FAH Liquidating Corp.*, 572 B.R. 117, 128–30 (Bankr. D. Del. 2017) (applying Restatement (Second) of Conflicts of Laws framework for tort and restitution claims in choice of law analysis for fraudulent transfer claim under 11 U.S.C. § 544, and considering, inter alia, the relevant contract's governing law, where the parties centered their relationship, and where transfers originated from and were received).  Luck reserves all of his rights with regard to the same.

for the benefit of creditors, and could not have been brought by Alpha.  *See* 11 U.S.C. § 544(b) ("[T]he trustee may avoid any transfer . . . that is voidable under applicable law by a creditor . . . ."); *id.* at § 550(a) ("[T]o the extent that a transfer is avoided under section 544, . . . 547, [or] 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."); Del. Code Ann. Tit. 6, § 1304(a)(2) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . .").[10]

"[I]t is well settled in the Second Circuit, that avoiding powers may be exercised by a debtor in possession only for the benefit of creditors, and not for the benefit of the debtor itself." *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 80, 94, 97–98 (S.D.N.Y. 2008) (quoting *In re Liggett*, 118 B.R. 219, 222 (Bankr. S.D.N.Y. 1990)), *aff'd*, 379 F. App'x 10 (2d Cir. 2010); *see Adelphia Recovery Tr. v. Bank of Am., N.A.*, 379 F. App'x 10, 11 (2d Cir. 2010) (affirming dismissal of preference and fraudulent transfer claims for lack of standing when terms of debtor's plan provided that creditors of the debtor were paid in full and did not stand to benefit from any recovery); *In re Refco Sec. Litig.*, No. 07 MDL 1902 JSR, 2010 WL 5129011, at *1 (S.D.N.Y. Dec. 14, 2010) (dismissing fraudulent transfer claim for failing to adequately allege existence of valid creditor).  "The purpose underlying the trustee's avoidance powers is namely to prevent asset depletion that otherwise would have been available to creditors."  *In re Jie Xiao*, 608 B.R. 126, 156 & n.22 (Bankr. D. Conn. 2019).  "Fraudulent conveyance laws were not designed to affect the legal relationship between the transferor and transferee."  *In re Murphy*, 331 B.R. 107, 124–25 (Bankr. S.D.N.Y. 2005) (collecting cases) ("[T]he trustee in this case has the right to avoid the transfer of the Property as fraudulent but only to the extent necessary to

---

[10] *See also* Conn. Gen. Stat. Ann. §§ 52-552e(a) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . .").

satisfy allowed prepetition and administrative creditor claims, *i.e.*, those *legally* harmed by the transfer.").  Because of this, "[t]he power to avoid the debtor's prepetition transfers and obligations to maximize the bankruptcy estate for the benefit of creditors has been called a 'legal fiction.'"  *In re Cybergenics Corp.*, 226 F.3d 237, 243–44 (3d Cir. 2000) (quoting *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990)).  It merely "puts the debtor in possession 'in the overshoes' of a creditor."  *Id.* at 244 (quoting Benjamin Weintraub & Alan N. Resnick, BANKRUPTCY LAW MANUAL ¶ 7.04, 7–15 (3d ed. 1992)).  "Much like a public official has certain powers upon taking office as a means to carry out the functions bestowed by virtue of the office or public trust, the debtor in possession[, or the trustee,] is similarly endowed to bring certain claims on behalf of, and for the benefit of, all creditors."  *Id.*

It is indisputable that the Plan Administrator's claims in the Avoidance Action are being brought on behalf of, and for the benefit of, Alpha's creditors, and not Alpha itself.  McMahon even acknowledges this reality.  (*See* Motion, Dkt. No. 26-1, at 9 ("The Plan Administrator further makes clear that his claims against Luck are brought 'on behalf of the Debtor's [(i.e., Alpha's)] estate and its creditors.'").  Had Alpha not filed for bankruptcy, and absent a benefit to a valid creditor, the Plan Administrator would not be able to pursue the claims asserted against Luck in the Avoidance Action.  Thus, these claims are easily distinguishable from claims that *Alpha* could have brought against Luck, such as claims for breach of the Employment Contract, breach of fiduciary duty, or violation of the CNNA.

Moreover, the Guaranty even expressly contemplates McMahon's obligations thereunder continuing in the context of bankruptcy proceedings involving Alpha.  As noted above, the Guaranty provides, in pertinent part, that McMahon's obligations are "absolute, unconditional, continuing and irrevocable . . . , irrespective of . . . any dissolution, liquidation or termination of

[Alpha], or any other circumstances that may otherwise constitute a legal or equitable discharge or defense of [McMahon], all of which are hereby waived by [McMahon]." (Third Party Compl., Ex. 1, at Ex. A ¶ 2.) Thus, the Guaranty anticipates the possibility of Alpha commencing a bankruptcy proceeding, and expressly provides that McMahon's obligations under the Guaranty are continuing, unconditional, and absolute irrespective of any bankruptcy action. Particularly in such context, the plain meaning of "third party" would include a bankruptcy trustee, a plan administrator, or a creditor that could bring the foregoing avoidance causes of action.

The Plan Administrator brought the Avoidance Action on behalf of, and in the overshoes of, Alpha's third party creditors, and it would be legal fiction to characterize these claims as Alpha's claims instead of third party claims for purposes of the Indemnification Provision. Despite McMahon's assertions, it is clear that pursuant to the Guaranty, McMahon is required to indemnify Luck (in addition to paying him any avoided Monetary Compensation) in accordance with the Indemnification Provision of the Employment Contract.

### iii.   There Is No Judicial Estoppel

In light of the foregoing inalienable truths, McMahon attempts to argue that Luck should be judicially estopped from arguing that the Plan Administrator is a third party under the terms of the Employment Contract. "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011) (quoting *DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010). The Second Circuit limits judicial estoppel "to situations where the risk of inconsistent results with its impact on judicial integrity is certain," meaning "that judicial

estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." *Id.* (citations omitted).  McMahon's argument fails because none of the elements for judicial estoppel are present.

In support of his argument for the application of judicial estoppel, McMahon relies on the following:  (i) statements made by Luck in the Injunction Motion and the Injunction Reply, which were filed in the Prior Action; (ii) statements made by Luck in his Reply in Support of Motion to Transfer Venue; (iii) statements made by Luck in his Stay Motion Reply; and (iv) statements made by Luck's counsel at the hearing before the Bankruptcy Court on the Motion to Transfer Venue.  (*See* Motion, Dkt. No. 26-1, at 19–23.)

As a preliminary matter, McMahon cannot rely on statements made by Luck in the Injunction Motion, the Injunction Reply, or the Stay Motion Reply because any position advanced by Luck therein was not adopted by the court.  *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005) ("Assuming, arguendo, that Schreiber and Walter, Conston advanced, with respect to the validity of the assignments, a position in their first motion to dismiss that was actually inconsistent with that taken on the current motion, it is clear that the earlier position was never adopted by the district court.  Therefore, the requirements for invoking the doctrine of judicial estoppel are not present here."); *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 & n.4 (2d Cir. 1993) (holding no basis for application of judicial estoppel because there was no judicial acceptance of the prior inconsistent position, and noting judicial estoppel is only applied when the party was successful in asserting its prior position); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990) ("The doctrine of judicial estoppel is . . . unavailing since it applies only if the party against whom the estoppel is claimed actually

obtained a judgment as a result of the inconsistent position. That factor is absent here, since *Hart* was dismissed voluntarily in accordance with a stipulation." (citation omitted)); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 CIV. 4483 WHP MHD, 2007 WL 2376170, at *7 (S.D.N.Y. Aug. 10, 2007) ("The fact that we did not accept defendants' alleged first position is fatal to plaintiffs' invocation of judicial estoppel.").  Specifically, the Injunction Motion was denied in the Prior Action as moot after the case was dismissed, (Ex. O, Prior Action, Dkt. No. 487), and the Stay Motion was never adjudicated in this adversary proceeding.  *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) ("Lyons' FELA action settled before the jury rendered a verdict on damages.  A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." (cleaned up)); *Bonnie & Co. Fashions v. Bankers Tr. Co.*, 18 F. Supp. 2d 297, 301 & n.4 (S.D.N.Y. 1998) ("[T]he issue of Bonnie & Co.'s prior inconsistent statement was never adjudicated and therefore could not possibly have been adopted by the Florida District Court.").  Thus, even assuming, *arguendo*, that Luck took the position that the Plan Administrator was not a third party under the terms of the Indemnification Provision in either the Injunction Motion, the Injunction Reply, or the Stay Motion Reply (which he did not), the doctrine of judicial estoppel does not apply because any statements made in those filings were not adopted by the applicable court.

Because this Court must disregard any purported position taken in the Injunction Motion, the Injunction Reply, and the Stay Motion Reply as not having been adopted, the remaining statements upon which McMahon relies are those made in court filings and at oral argument in connection with the Motion to Transfer Venue.  Specifically, McMahon's Motion cites the following statements made by Luck and his counsel:

- "*[T]he Debtor's role in that action* was more expansive. ***In the Connecticut Action, the Debtor brought and actively litigated*** counterclaims against Luck for breach of contract pursuant to the Employment Contract and the confidentiality provisions of the CNNA, and breach of fiduciary duties. . . . Thus, the Debtor was a real party in interest and stood to receive a substantial benefit from the counterclaims asserted in the Connecticut Action." (Motion, Dkt. No. 26-1, at 21 (quoting Dkt. No. 29, at 1 (referring to the Prior Action as the "Connecticut Action").)

- "There's a number of factors here that I'm just going to highlight very briefly at the opening, that differentiates this case from the garden-variety avoidance action that we're so used to deal[ing] with. ***One, there's the existence of multi-year litigation in the Connecticut District Court involving these same parties: Mr. Luck, Alpha, Mr. McMahon.***" (*Id.* at 21 & Ex. F at 5 (quoting Del. Adv. Pro., 1/23/23 Tr. 5:11–17).)

- "*[T]here were two years of experience that was gained by the District Court in Connecticut overseeing [the] same parties* . . . ." (*Id.* at 21 & Ex. F at 16 (quoting Del. Adv. Pro., 1/23/23 Tr. 16:6–8).)

The foregoing statements are not inconsistent with Luck's claims against McMahon in the Third Party Complaint for declaratory judgment and contractual indemnification under the Guaranty in connection with the Indemnification Provision of the Employment Contract. Quite clearly, Luck does not take, and has never taken, the position that the Plan Administrator is anything but a third party under the terms of the Indemnification Provision.

Luck argued, in support of the Motion to Transfer Venue, that Alpha's role in the Prior Action provided this Court with two years of experience relating to the factual allegations in the Plan Administrator's Avoidance Complaint. This is not inconsistent with the fact that the Plan Administrator is a third party under the terms of the Indemnification Provision.

McMahon's Motion "cherry-picks" and takes out of context Luck's statements in support of the Motion to Transfer Venue that the Prior Action involved the "same parties." (*See* Motion, Dkt. No. 26-1, at 21 & Ex. F at 6.) Read in context, Luck's statements were made to demonstrate the efficiency and economy that could be gained by transferring the venue of this adversary proceeding to this Court given the familiarity this Court gained from presiding over the Prior Action. (*See* Motion, Ex. F, at 5–22.) This makes sense given Alpha's decision as

debtor-in-possession to bifurcate its causes of action against Luck, and assign to McMahon Alpha's non-bankruptcy causes of action, and retain the bankruptcy avoidance claims that Alpha vested in the Plan Administrator under the Plan, even though they shared some similar factual underpinnings.  Indeed, during the very same oral argument relied on by McMahon, Luck's counsel referenced numerous times the fact that the avoidance claims are being advanced and litigated by the Plan Administrator as separate and distinct from Alpha.  (*See, e.g.*, *id.*, Ex. F at 8 ("And, finally, which is also unusual, there's a third-party claim by Mr. Luck against Mr. McMahon in this case seeking recoveries of any monies that get avoided and recovered by the ***plan administrator***." (emphasis added)); *id.*, Ex. F at 10 (observing that Alpha brought counterclaims against Luck in Prior Action that have similar underlying allegations to those "in the plan administrator's complaint"); *id.*, Ex. F at 14 (observing in convenience of parties' analysis for transfer of venue that plaintiff Plan Administrator resides in New York); *id.*, Ex. F at 15–16 (observing that no additional burden to plaintiff Plan Administrator if venue transferred to Connecticut because Plan Administrator already has Connecticut local counsel).)  These statements read properly in context are not "clearly inconsistent" with the position that Luck may enforce the Indemnification Provision in this adversary proceeding because the Plan Administrator is a third party.

Additionally, in granting the Motion to Transfer Venue, the Bankruptcy Court never adopted the position that the Plan Administrator is not a third party under the terms of the Indemnification Provision.  For instance, in the Bankruptcy Court's bench ruling, the Bankruptcy Court noted that "[t]his adversary proceeding was filed by the Plan Administrator," (Dkt. No. 26-8, at 7:21–22), and that "[w]hile plaintiff was appointed in this jurisdiction, he works in White Plains, which is closer to Connecticut District Court than here," (*id.* at 11:3–5).  The Bankruptcy

Court thus considered the Plan Administrator a third party vis-à-vis Alpha in granting the Motion to Transfer Venue.

Lastly, McMahon fails to articulate any unfair advantage that was gained by Luck when the Bankruptcy Court granted the Motion to Transfer Venue. McMahon never took a position on the Motion to Transfer Venue, and McMahon certainly could have opposed the relief sought therein but chose not to do so, which makes sense since transfer benefitted him as a Connecticut resident. (Third Party Compl. ¶ 2.) Despite the Motion to Transfer Venue being filed shortly before Luck's Third Party Complaint against McMahon, the motion remained pending for over seven months after McMahon was made a party to this adversary proceeding and McMahon's counsel was present at oral argument thereon. (*See* Del. Adv. Proc., Dkt. Nos. 13, 27–28, 56.) Indeed, McMahon sought and was granted an extension of time to respond to the Third Party Complaint until 14 days after the Bankruptcy Court's entry of an order adjudicating the Motion to Transfer Venue. (Dkt. Nos. 39, 43.) Moreover, McMahon has understood since this adversary proceeding was commenced that it was brought by the Plan Administrator, and that Luck would be seeking indemnification under the Guaranty. (*See* Ex. J, Prior Action, Dkt. No. 450, at 1–2 (submitting, on behalf of Alpha and McMahon, that "Luck's dispute is with the Plan Administrator in the Delaware Action, and the Plan Administrator is the appropriate and only party to respond to the merits of Luck's Motion"); Ex. K, Prior Action, Dkt. No. 453, at 5 (stating that the Plan Administrator's "pursuit of [avoidance] claims may adversely impact Mr. McMahon, since he guaranteed Luck's employment contract, and Luck says he will seek to hold Mr. McMahon liable for any amounts he is required to pay"); Third Party Compl., ¶¶ 26–27 (alleging that Luck demanded McMahon indemnify him in connection with the Avoidance Action prior to filing the Third Party Complaint).) Contrary to McMahon's allegation that

allowing Luck to pursue his claims under the Indemnification Provision "would be the height of strategic gamesmanship and manifest unfairness," it appears instead that McMahon is attempting to twist the entry of relief on the Motion to Transfer Venue—which he did not oppose—to his manifestly unjust benefit.  (*See* Motion, Dkt. No. 26-1, at 23.)  Declining to apply judicial estoppel will not result in Luck deriving an unfair advantage.  *See In re Frontier Ins. Grp., Inc.*, 598 B.R. 87, 100 (S.D.N.Y. 2019) (declining to apply judicial estoppel where no risk of unfair advantage).

It is evident that McMahon has failed to demonstrate that judicial estoppel prevents Luck from asserting claims for declaratory judgment and contractual indemnification in connection with the Indemnification Provision.

## IV.    CONCLUSION

For the foregoing reasons, Third-Party Defendant Vincent K. McMahon's Motion to Dismiss Third Party Complaint should be denied in its entirety, together with such other and further relief as the Court deems proper.

Dated: March 14, 2023                          Respectfully submitted,


                                               By: /s/ Jaime A. Welsh
                                                   Eric Goldstein (ct27195)
                                                   Jaime A. Welsh (ct30078)
                                                   SHIPMAN & GOODWIN LLP
                                                   One Constitution Plaza
                                                   Hartford, CT 06103-1919
                                                   Tel. (860) 251-5000
                                                   Fax (860) 251-5218
                                                   egoldstein@goodwin.com
                                                   jwelsh@goodwin.com

                                                   *Attorneys for Oliver Luck*