# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>ALPHA ENTERTAINMENT LLC,<br>     *Debtor*. | Chapter 11<br><br>U.S. Bankruptcy Court for the District of Delaware, No. 20-10940 (LSS) |
| PETER HURWITZ, solely in his capacity as Plan Administrator of Alpha Entertainment LLC,<br>     *Plaintiff*,<br><br>     v.<br><br>OLIVER LUCK,<br>     *Defendant*. | Adversary Proceeding<br><br>No. 3:23-cv-118 (VAB) |
| OLIVER LUCK,<br>     *Third-Party Plaintiff*,<br><br>     v.<br><br>VINCENT K. MCMAHON,<br>     *Third-Party Defendant*. | |

## RULING AND ORDER ON MOTION TO DISMISS THIRD-PARTY COMPLAINT

Oliver Luck has sued Vincent K. McMahon, seeking to enforce a guaranty. *See* Third-Party Compl., *Hurwitz v. Luck*, No. 22-50256 (LSS) (Bankr. D. Del. Aug. 17, 2022), ECF No. 27 ("Third-Party Compl."). Alpha Entertainment ("Alpha" or the "Debtor"), a Connecticut limited liability company principally owned by Mr. McMahon, previously employed Mr. Luck, and Mr. McMahon had allegedly agreed to personally guarantee Alpha's obligations to Mr. Luck under his employment contract with Alpha. *See id.* ¶¶ 3, 10–12, 15–16.

In April 2020, Alpha terminated Mr. Luck and shortly thereafter filed for bankruptcy. *See id.* ¶¶ 20–21. Alpha's plan administrator, Peter Hurwitz (the "Administrator"), later initiated an adversary proceeding against Mr. Luck in which he sought to avoid and recover certain payments made to Mr. Luck under the employment contract between Mr. Luck and Alpha. *See* Compl., *Hurwitz v. Luck*, No. 22-50256 (LSS) (Bankr. D. Del. Apr. 11, 2022), ECF No. 1 ("Avoidance Action Compl.").

Mr. Luck then filed a Third-Party Complaint against Mr. McMahon, requesting a judgment that Mr. McMahon would be liable under the guaranty for any amounts recovered by the Administrator from Mr. Luck in the Avoidance Action and for fees and expenses incurred by Mr. Luck. *See* Third-Party Compl. ¶¶ 30–33, 38–39.

Mr. McMahon has moved to dismiss the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss Third Party Compl., ECF No. 26 ("Mot. to Dismiss").

For the following reasons, Mr. McMahon's motion to dismiss is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

According to Mr. Luck's Complaint, Alpha was originally formed for the purpose of operating the XFL professional football league, and the company was principally owned and capitalized by Mr. McMahon. Third-Party Compl. ¶¶ 9–10.

#### 1. The Employment Contract and the Guaranty

On May 30, 2018, Alpha and Mr. Luck allegedly executed an employment agreement (the "Employment Contract") under which Mr. Luck would serve as the Commissioner and Chief Executive Officer ("CEO") of the XFL. *Id.* ¶¶ 11–12; Ex. 1 to Third-Party Compl., ECF

No. 1 ("Employment Contract"). Under the Employment Contract's Monetary Compensation

Provisions, Mr. Luck would receive a base salary of $5,000,000 per year plus an annual bonus of

$2,000,000 that would be paid on the last day of each contract year, provided that Mr. Luck was

still employed on that date. Third-Party Compl. ¶ 13. The agreement also contains an

Indemnification Provision, which states:

> To the fullest extent permitted by law, both during and after the
> Term, Alpha shall pay all reasonable expenses incurred by Mr. Luck
> and any judgments or fines rendered or levied against Mr. Luck in
> any action, arbitration, investigation or other proceeding brought by
> any third party against Mr. Luck (whether or not the XFL, Alpha or
> any of their affiliates is a party to that action) that arises from or
> otherwise relates to the course or scope of Mr. Luck's employment,
> unless such action or other proceeding arises directly from Mr.
> Luck's gross negligence or willful misconduct. . . . This paragraph
> shall survive any expiration or termination of this Contract.

*Id.* ¶ 14; Employment Contract at 5–6.[1]

On the same date that the Employment Contract was executed, Mr. McMahon allegedly

executed a guaranty (the "Guaranty") in favor of Mr. Luck in which Mr. McMahon agreed to

personally guarantee Alpha's payment and performance of all of its obligations under the

Employment Contract. Third-Party Compl. ¶¶ 15–16. The Guaranty provides that Mr. McMahon

"irrevocably and unconditionally guarantees, as primary obligor and not merely as a surety, the

due and punctual payment [and] performance by [Alpha] of all of its agreements and obligations

under the [Employment Contract]." Third-Party Compl. ¶ 16; Ex. A to Employment Contract at

¶ 1, ECF No. 27-1 at 7 ("Guaranty").

The Guaranty further states that Mr. McMahon's obligations "shall be absolute,

unconditional, continuing and irrevocable and shall remain in full force and effect until the full

---

[1] Unless otherwise noted, page numbers refer to the ECF-generated page numbers rather than a document's internal page numbers.

performance by the [Alpha] of all of its agreements and its obligation under the [Employment

Contract], irrespective of the validity, regularity or enforceability of [the Employment

Contract]." Guaranty ¶ 2. Mr. McMahon's obligations under the Guaranty also are not affected

by "any dissolution, liquidation or termination of [Alpha], or any other circumstances that may

otherwise constitute a legal or equitable discharge or defense of [Mr. McMahon], all of which

are hereby waived by [Mr. McMahon]." *Id.*

### 2.   Mr. Luck's Termination and Alpha's Bankruptcy

On April 9, 2020, Alpha allegedly terminated Mr. Luck's employment as Commissioner

and CEO of the XFL. *Id.* ¶ 20. Mr. Luck alleges that he was wrongfully terminated, while Alpha

asserted that the termination was for cause. *Id.*

Four days later, on April 13, Alpha filed a voluntary Chapter 11 petition for bankruptcy

in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy

Court"). *Id.* ¶ 21.

On April 16, 2020, Mr. Luck filed a complaint against Mr. McMahon in this Court (the

"Wrongful Termination Action"), asserting claims for breach of the Guaranty in connection with

Mr. Luck's alleged wrongful termination. *See* Compl., *Luck v. McMahon*, No. 20-cv-516 (VAB)

(D. Conn. Apr. 16, 2020), ECF No. 1.

After this Court concluded that Alpha was an indispensable party in that action, Mr. Luck

obtained an order from the Delaware Bankruptcy Court lifting the bankruptcy stay for the limited

purpose of joining Alpha as a nominal defendant in the Wrongful Termination Action. *See*

Ruling and Order on Mot. for Prejudgment Remedy, *Luck v. McMahon*, No. 20-cv-516 (VAB)

(D. Conn. June 26, 2020), ECF No. 79 ("Joinder Order"); Relief from Stay Order, *In re Alpha*

*Entertainment LLC*, No. 20-10940 (LSS) (Bankr. D. Del. Aug. 7, 2020), ECF No. 355. In order

to obtain relief from stay from the bankruptcy court, Mr. Luck agreed to waive "any recovery against Debtor or its bankruptcy estate on account of any claim or claims . . . in this bankruptcy case." *Id.* at 2.

On June 23, 2022, Mr. Luck, Mr. McMahon, and Alpha stipulated to the dismissal of the Wrongful Termination Action with prejudice. *See* Stipulation of Dismissal, *Luck v. McMahon*, No. 20-cv-516 (VAB) (D. Conn. June 23, 2022), ECF No. 484; Ex. 1 to Reply, ECF No. 38-1 ("Settlement and Release Agreement").

### B. Procedural History

On April 11, 2022, the Administrator initiated an adversary proceeding against Mr. Luck in the District of Delaware Bankruptcy Court (the "Avoidance Action"). *See* Avoidance Action Compl. In that action, the Administrator sought to avoid and recover certain payments made to Mr. Luck under the Employment Contract, alleging that these payments constituted fraudulent or preferential transfers under the Bankruptcy Code and state law. *See id.* ¶¶ 27–61.

On August 17, 2022, Mr. Luck filed his Third-Party Complaint against Mr. McMahon, seeking a judgment that Mr. McMahon would be liable under the Guaranty for any amounts recovered by the Administrator from Mr. Luck in the Avoidance Action and for fees and expenses incurred by Mr. Luck. *See* Third-Party Compl.

On January 27, 2023, the Bankruptcy Court granted a motion by Mr. Luck to transfer venue to this Court. *See* Order, *Hurwitz v. Luck*, No. 22-50256 (LSS) (Bankr. D. Del. Jan. 27, 2023), ECF No. 56.

On February 21, 2023, Mr. McMahon filed a motion to dismiss the Third-Party Complaint. *See* Mot. to Dismiss; Third Party Def. Vincent K. McMahon's Mem. of Law in Supp. of his Mot. to Dismiss Third Party Compl., ECF No. 26-1 ("Mem.").

On March 14, 2023, Mr. Luck filed his memorandum in opposition to Mr. McMahon's motion to dismiss. *See* Third-Party Pl. Oliver Luck's Opp'n to Third-Party Def. Vincent K. McMahon's Mot. to Dismiss, ECF No. 31 ("Opp'n").

On March 28, 2023, Mr. McMahon filed a reply in support of his motion to dismiss. *See* Third-Party Def. Vincent K. McMahon's Reply in Supp. of his Mot. to Dismiss Third Party Compl., ECF No. 37 ("Reply").

On May 26, after receiving permission from the Court, Mr. Luck filed a sur-reply to address new arguments raised for the first time in Mr. McMahon's reply. *See* Sur-Reply to Third-Party Def. Vincent K. McMahon's Reply in Supp. of his Mot. to Dismiss Third Party Compl., ECF No. 51 ("Sur-Reply"); Order, ECF No. 48 (granting leave to file a sur-reply but denying Mr. Luck's request to strike portions of Mr. McMahon's reply brief).

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Mr. McMahon argues that Mr. Luck's claims under the Indemnification Provision in the Employment Contract must fail unless Mr. Luck can establish that Alpha had an indemnity obligation to Mr. Luck and that Alpha breached that obligation. *See* Mot. to Dismiss at 1–2. Mr.

McMahon argues that Mr. Luck cannot make this showing because (1) Mr. Luck has waived any right to seek recovery from Alpha; (2) the Indemnification Provision applies only to actions brought by third parties; and (3) Mr. Luck cannot receive indemnification for compensation that Alpha already paid out under the Employment Contract. *See id.* at 2. Mr. McMahon also argues that Mr. Luck cannot rely on Mr. McMahon's guarantee of the Monetary Compensation Provisions because (1) the Third-Party Complaint asserts only claims under the Indemnification Provision and (2) Mr. Luck has waived any claims against Mr. McMahon under the Monetary Compensation Provisions. *See* Reply at 13–14.

The Court will first address Mr. McMahon's two arguments related to the Monetary Compensation Provisions. The Court will then address Mr. McMahon's three remaining arguments related to the Indemnification Provision.

### A. The Issue of Whether Mr. Luck Has Properly Asserted Claims Under the Monetary Compensation Provisions

In this action, Mr. Luck asserts that Mr. McMahon is liable to Mr. Luck for (1) any avoided transfers recovered by the Administrator in the Avoidance Action; (2) any interest or expenses awarded to the Administrator in connection with the Avoidance Action; and (3) Mr. Luck's attorney's fees and costs in the Avoidance Action and any fines levied against him in that action.[2] *See* Third-Party Compl. ¶¶ 30–33, 38–39.

Mr. Luck clarifies in his opposition that his claim related to potential avoided transfers is based on Mr. McMahon's guarantee of the Employment Contract's Monetary Compensation Provisions rather than the Indemnification Provision. *See* Opp'n at 27 n.8. His claims for interest, expenses, fees, and costs, meanwhile, are based on the Contract's Indemnification Provision. *See*

---

[2] Mr. Luck also seeks to recover attorney's fees and costs that he incurs "in the course of prosecuting this Third Party Complaint against McMahon." Third-Party Compl. at 10. Because neither party has specifically addressed this category of fees and expenses, the Court will not do so here.

*id.* Thus, according to Mr. Luck, Mr. McMahon's argument that the Indemnification Provision applies only to third-party claims is relevant to Mr. Luck's claims for interest, expenses, fees, and costs, but is not relevant to his claim for potential avoided transfers. *See id.*

In his reply, Mr. McMahon argues that Mr. Luck's opposition "improperly seeks to amend the claims in his Complaint." Reply at 13. In Mr. McMahon's view, all of the claims asserted in Mr. Luck's Complaint are based on Mr. McMahon's guarantee of Alpha's obligations under the Indemnification Provision. *See id.* Mr. McMahon therefore contends that Mr. Luck has used his opposition brief to add a new claim based on the Monetary Compensation Provisions. *See id.*

The Court disagrees.

Mr. Luck's Third-Party Complaint sufficiently alleges a claim under the Monetary Compensation Provisions of the Employment Contract. The Third-Party Complaint first describes the relevant Monetary Compensation Provisions, alleging that "[t]he Employment Contract provides that Luck would receive a base salary of $5,000,000 per Contract Year . . . [and] further provides that Luck would be paid a guaranteed annual bonus of $2,000,000 on the last day of each Contract Year . . . subject to his continued employment on the scheduled payment date." Third-Party Compl. ¶ 13. It then invokes Mr. McMahon's obligation to guarantee payments owed under the Employment Contract. *See id.* ¶ 16 ("Pursuant to the Guaranty, McMahon 'irrevocably and unconditionally guarantees, as primary obligor and not merely as surety,' the due and punctual payment and performance by the Debtor of all of its agreements and obligations under the Employment Contract. The Guaranty provides that it is 'a guarantee of payment and not of collection.'").

9

The Third-Party Complaint further specifies that the transfers the Administrator seeks to avoid are compensation paid to Luck under the Employment Contract. *See id.* ¶ 24 ("In the Avoidance Complaint, the Plan Administrator seeks to avoid and recover, as preferential and constructively fraudulent transfers, payments that the Debtor made to Luck under the Employment Contract."). Finally, the Third-Party Complaint alleges that "[p]ursuant to the Guaranty, McMahon is liable to Luck for the payment of all amounts owed to Luck under the Employment Contract." Even if Mr. Luck does not explicitly allege that he is seeking to enforce Mr. McMahon's promise in the Guaranty to fulfill Alpha's obligations under the Monetary Compensation Provisions in the Employment Contract, these allegations "are specific enough to point the Court to the related provisions in the respective contracts." *Arch Ins. Co. v. Centerplan Constr. Co., LLC*, No. 3:16-cv-01891 (VLB), 2018 WL 6519063, at *9 (D. Conn. Dec. 11, 2018) (citing *Sharp Elecs. Corp. v. Solaire Dev., LLC*, 156 Conn. App. 17, 34–36 (2015)).

Mr. McMahon's different view appears to arise out of the Third-Party Complaint's repeated use of the term "indemnify" to describe Mr. Luck's claims against Mr. McMahon. Mr. McMahon argues that the use of this word shows that Mr. Luck's claims are based solely on Mr. McMahon's guarantee of Alpha's indemnification obligations under the Employment Contract, as set forth in the Indemnification Provision. But as Mr. Luck points out, "indemnify" means "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default." *Indemnify*, *Black's Law Dictionary* (11th ed. 2019). Moreover, "indemnify" is commonly used to refer to a guarantor's obligation to the beneficiary of a guaranty. *See, e.g.*, *AXA Inv. Managers UK Ltd. v. Endeavor Cap. Mgmt. LLC*, 890 F. Supp. 2d 373, 384 (S.D.N.Y. 2012) (noting that a guaranty of payment "allows a creditor to seek indemnification directly from the guarantor," while a guaranty of collection "allows a creditor to proceed against the guarantor

only after having pursued collection from the principal debtor"); *In re 975 Walton Bronx LLC*, No. 21-40487 (JMM), 2022 WL 5265041, at *11 (Bankr. E.D.N.Y. Oct. 6, 2022) (describing a "bad act" guaranty that "among other things, obligated [the guarantor] to indemnify and hold harmless [the lender] and its assigns from damages resulting from any act or failure to act which materially reduces the Property's value").

Here, Mr. Luck uses the term to refer to Mr. McMahon's obligations to Mr. Luck under the Guaranty: an obligation to reimburse Mr. Luck for a potential loss suffered because of Alpha's failure to fulfill its contractual obligations. This use is accurate regardless of whether those unfulfilled obligations arise from the Monetary Compensation Provisions or the Indemnification Provision of the underlying Employment Contract.

Accordingly, Mr. Luck's Third-Party Complaint adequately asserts claims under the Monetary Compensation Provisions of the Employment Contract.

### B. The Issue of Whether Mr. Luck Has Waived His Claims Against Mr. McMahon Under the Monetary Compensation Provisions

Mr. McMahon argues that, even if Mr. Luck properly alleged claims under the Monetary Compensation Provisions, he released any claims under these provisions as part of the settlement of the Wrongful Termination Action. *See* Reply at 13–14. In resolving that action, the parties executed a Settlement and Release Agreement, which provided that Mr. Luck "RELEASES AND FOREVER DISCHARGES McMahon from all claims . . . whatsoever, . . . which Luck ever had, now has or hereafter can, shall or may have . . . from the beginning of time through [the date of the release], including, without limitation, any claims that were asserted or could have been asserted in the [Wrongful Termination] Action." Settlement and Release Agreement ¶ 5. Mr. McMahon points out that the claims asserted in the Wrongful Termination Action were

based on the Monetary Compensation Provisions and argues that any claims in the current action that are based on these provisions were necessarily covered by this release. *See* Reply at 14.

Mr. Luck points out, however, that the Settlement and Release Agreement contains an explicit exception. After reciting the general release quoted above, it states: "Notwithstanding the foregoing, nothing herein shall release, modify or terminate Luck's rights to seek recovery under the Indemnification section of the Employment Contract or under the Guaranty, including for amounts related to [the Avoidance Action claims], and it is understood that McMahon preserves all defenses to such a claim." Settlement and Release Agreement ¶ 5. Mr. Luck contends that this provision preserves the claims he asserts in the Third-Party Complaint. *See* Sur-Reply at 9.

The Court agrees.

Mr. Luck's claims in this case fall squarely within the exception contained in the release provision. Through these claims, Mr. Luck "seek[s] recovery . . . under the Guaranty . . . for amounts related to [the Avoidance Action claims]." Mr. McMahon suggests that this exception applies only to claims under the Indemnification Provision of the Employment Contract. *See* Reply at 14. He does not refer directly to the language of the Release and Settlement Agreement, but his argument appears to rely on the exception's reference to "recovery under the Indemnification section of the Employment Contract or under the Guaranty." Settlement and Release Agreement ¶ 5. The disjunctive phrasing of the exception does not require that the preserved claims rely on both the Indemnification Provision and the Guaranty. Mr. Luck's claims are preserved as long as they rely on either the Guaranty or the Indemnification Provision.

Accordingly, Mr. Luck has not released the claims he asserts against Mr. Luck in the Third-Party Complaint.

**C.  The Issue of Whether Mr. Luck's Waiver of Any Recovery Against Alpha Bars His Claims in This Action**

Mr. McMahon argues that Mr. Luck has no indemnity obligation to Mr. Luck unless two conditions are met: (1) Alpha has an indemnity obligation to Mr. Luck; and (2) Alpha breached that obligation under the Employment Contract. *See* Mem. at 16–17. In support of this argument, Mr. McMahon relies on this Court's prior order in the Wrongful Termination Action, which stated that "[t]o prevail against Mr. McMahon as a guarantor, Mr. Luck thus would have to establish that Alpha still had an obligation to him and breached that obligation under the Employment Contract." Joinder Order at 13. Mr. McMahon also points out that Mr. Luck waived the right to seek recovery from Alpha under the Delaware Bankruptcy Court's relief from stay order. *See* Mem. at 18. Thus, Mr. McMahon contends that Mr. Luck cannot assert any claim against Alpha and cannot establish that Alpha breached any indemnity obligation to Luck. *See id.* According to Mr. McMahon, since Mr. Luck cannot establish that Alpha has any indemnity obligation to him, he cannot invoke the Guaranty. *See id.* at 18–19.

In response, Mr. Luck argues that, under the broad language of the Guaranty, Mr. McMahon's obligation to Mr. Luck is independent from Alpha's liability. *See* Opp'n at 19–20. Mr. Luck contends that , as a result, his claims against Mr. McMahon do not depend on his ability to recover against Alpha. *See id.* He further argues that Mr. McMahon takes this Court's prior order out of context and that it does not require Mr. Luck to first establish Alpha's liability. *See id.* at 21. Mr. Luck also points out that, as a general principle, a debtor's discharge of liability in bankruptcy proceedings does not affect a creditor's ability to pursue collection from a guarantor. *See id.* at 22.

The Court agrees.

Under the Guaranty, Mr. McMahon "irrevocably and unconditionally guarantees, as primary obligor and not merely as surety," the performance of Alpha's obligations under the Employment Contract. Guaranty ¶ 1. This guaranty is one "of payment and not of collection." *Id.* The Guaranty also provides that Mr. McMahon's obligations "shall be absolute, unconditional, continuing and irrevocable," and that they are not dependent on "the validity, regularity or enforceability" of the Employment Contract. *Id.* ¶ 2.

A guaranty that states it is absolute and unconditional in this type of "broad, sweeping, and unequivocal language . . . forecloses any challenge to the enforceability and validity" of the underlying agreement. *136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12–13 (2d Cir. 2016) (applying New York law and citing, *inter alia*, *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 35 (2d Cir. 1999), for the proposition that "[a]bsolute and unconditional guaranties have in fact been found to preclude guarantors from asserting a broad range of defenses under New York law"); *see also Fitchville Recycling, Inc. v. United Paper Corp.*, No. CV 980583462, 1998 WL 951023, at *2 (Conn. Super. Ct. Dec. 22, 1998) (holding that a guaranty containing nearly identical language was "so all-encompassing that if the Note were defeated in an arbitration plaintiffs could still enforce the guaranty"). As a result, Mr. McMahon is "bound . . . to the obligations recited in the [Employment Contract], regardless of whether the [Employment Contract] or its provisions were enforceable as to [Alpha]." *136 Field Point Circle*, 644 F. App'x at 13. Thus, while Mr. Luck does need to show that he is owed an obligation under the Employment Contract, he does not need to establish that this obligation is enforceable against Alpha.

14

Mr. McMahon's reliance on this Court's prior order in the Wrongful Termination Action then is misplaced. In that case, the issue was whether there was an obligation under the Employment Contract at all. Alpha's obligation to pay Mr. Luck his remaining compensation as severance was triggered only if Alpha terminated Mr. Luck without cause. *See* Employment Contract at 4. If the termination had been for cause, there would be no obligation under the Employment Contract and, therefore, nothing for Mr. McMahon to Guaranty.

In the context of that claim, one for a severance payment, the Court emphasized that Mr. McMahon's obligation under the Guaranty required the existence of an obligation under the Employment Contract. The Court noted that if Alpha had properly terminated Mr. Luck for cause, there would be no obligation under the Guaranty because, in that scenario, Mr. Luck was not entitled to any additional payment beyond 'previously accrued salary and any vested employee benefits.'" Joinder Order at 13 (quoting Employment Contract at 4). As a result, "[t]o prevail against Mr. McMahon as a guarantor [on the claims for severance asserted in the Wrongful Termination Action], Mr. Luck . . . would have to establish that Alpha still had an obligation to him [to pay this severance amount] and breached that obligation under the Employment Contract." *Id.*

Here, Mr. McMahon's argument does not focus on the underlying obligations set forth in the Employment Contract. Instead, he argues that Mr. Luck cannot pursue any claim under the Guaranty unless he can first establish that Alpha would also be liable for the same claim.[3] When understood in context, the Court's prior order does not support this proposition.

---

[3] Mr. McMahon does argue separately that there is no underlying obligation under the Employment Contract because the Administrator is not a third party under the Indemnification Provision and because Alpha already fulfilled its obligation by paying Mr. Luck the compensation that the Administrator now seeks to recover. These arguments are addressed below. *See infra* Parts III.D–E.

Neither does the Delaware Bankruptcy Court's relief from stay order. In issuing that order, the court ruled only that Mr. Luck had waived "any recovery" against Alpha. *See* Relief from Stay Order at 2. Nothing in that order prevents Mr. Luck from establishing in this action that Alpha has a contractual obligation to Mr. Luck as long as Mr. Luck does not seek to recover from Alpha based on that obligation. Thus, the relief from stay order conforms with the principle that "[a] discharge of liability pursuant to the bankruptcy laws generally does not affect a guarantor's liability and leaves a creditor free to pursue collection from a guarantor." *Credit Suisse First Bos. Mortg. Cap. LLC v. Cohn*, No. 03-cv-6146 (DC), 2004 WL 1871525, at *8 (S.D.N.Y. Aug. 19, 2004).

Accordingly, neither this Court's prior order in the Wrongful Termination Action nor Mr. Luck's waiver of recovery against Alpha bars Mr. Luck's claims under the Guaranty in this case.

### D. The Issue of Whether The Administrator Is a Third Party Under the Indemnification Provision

The Employment Contract's Indemnification Provision requires Alpha to pay all reasonable expenses incurred by Mr. Luck and any judgments against him in any action "brought by a third party" against Mr. Luck in connection with his employment. Employment Contract at 5. The Contract does not further define the term "third party."

Mr. McMahon argues that the Administrator does not qualify as a third party under the Indemnification Provision because he occupies the same position as Alpha. According to Mr. McMahon, Alpha's bankruptcy plan further makes clear that the Administrator is not a third party. *See* Reply at 10. Mr. McMahon also asserts that Mr. Luck has repeatedly admitted that Alpha and the Administrator are the same. *See* Mem. at 15–17. He argues that Mr. Luck is judicially estopped from now arguing that they are distinct entities and that Mr. Luck's prior

statements qualify as judicial admissions that bind him in this action. *See id.* at 18–19; Reply at 4.[4]

Mr. Luck argues that the Administrator qualifies as a third party because he acts on behalf of Alpha's creditors, not merely as Alpha itself. *See* Opp'n at 28–30, 32–35. Mr. Luck also points out that courts have held in other contexts that a plan administrator is a third party vis-à-vis the debtor. *See id.* at 31. In response to Mr. McMahon's judicial estoppel argument, Mr. Luck argues that the elements of that doctrine are not satisfied because his prior statements are not inconsistent with his position in this case, because no court ever adopted the position that the Administrator and Alpha are the same, and because he would not gain any unfair advantage from his prior, purportedly inconsistent position. *See* Opp'n at 38–40. As to the judicial admissions argument, Mr. Luck contends that his prior statements do not qualify because they were not sufficiently formal and conclusive and because the Administrator's status under the Indemnification Provision is not a question of fact susceptible to a judicial admission. *See* Sur-Reply at 5–7.

The Court agrees, and will address each of these issues in turn.

### 1. The Issue of Whether the Administrator Is Distinct from Alpha Under the Indemnification Provision

When interpreting a contract under Connecticut law, courts "seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015) (internal quotation marks omitted). "When the language of a contract is clear and

---

[4] Mr. McMahon raises the judicial admission arguments and the arguments based on the bankruptcy plan for the first time in his reply brief. "[N]ew arguments may not be made in a reply brief," and Mr. McMahon could have made the same arguments in his motion to dismiss; they were not merely responses to issues raised by Mr. Luck in his opposition. *Cuba-Diaz v. Town of Windham*, 274 F. Supp. 2d 221, 230 n.8 (D. Conn. 2003). Although the Court will address these issues on the merits, Mr. McMahon's failure to raise these arguments in his motion to dismiss constitutes an alternative ground for rejecting them.

unambiguous, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." *Birkhold v. Birkhold*, 343 Conn. 786, 795 (2022) (internal quotation marks omitted). "When the language of a contract is ambiguous," on the other hand, "the determination of the parties' intent is a question of fact." *Id.* (internal quotation marks omitted). Because contractual ambiguities present questions of fact that cannot be resolved at the motion to dismiss stage, "a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

Here, neither the parties nor the Court have identified case law addressing the precise contractual interpretation issue presented in this case. Nonetheless, courts have concluded in other contexts that a plan administrator or trustee qualifies as a third party vis-à-vis the debtor. In *In re Robison*, 665 F.2d 166 (7th Cir. 1981), the Seventh Circuit considered an Illinois law that set forth title registration requirements for motor vehicle transfers and provided that, if these requirements were not met, the transfer was effective only "as between the parties." *Id.* at 168. The debtor's son, who had received a motor vehicle from the debtor and had failed to comply with the registration requirements, argued that the transfer must be effective between himself and the trustee because the trustee merely stands in the shoes of the debtor. *See id.* at 169. The court rejected this argument, noting that "(w)hile it is unquestionably true that the trustee (stands) in the shoes of the bankrupt, it is equally true that he (stands) in the overshoes of the creditors." *Id.* (alterations in original) (quoting *Schneider v. O'Neal*, 243 F.2d 914, 918 (8th Cir. 1957)). The court held that the trustee, "as a hypothetical lien creditor of the bankrupt as of the date of bankruptcy, occupies a position separate and distinct from the bankrupt" and that the trustee therefore did not qualify as one of "the parties" to the transfer. *Id.*

Courts have also distinguished between plan administrators and debtors based on an administrator's independence from the debtor and their differing degrees of knowledge regarding the debtor's activities. In *In re Skytec, Inc.*, 610 B.R. 14 (Bankr. D.P.R. 2019), the court responded to concerns that the debtor's "insiders have conflicts of interest that will prevent it from pursuing avoidance actions" by emphasizing that "the debtor's proposal to appoint a third party plan administrator should dispel, at least in part, any fear of conflicts of interest." *Id.* at 26–27. And in *In re O.P.M. Leasing Services, Inc.*, 32 B.R. 199, 202 (Bankr. S.D.N.Y. 1983), the court noted that "the more liberal approach to fraud pleading in bankruptcy cases predicated upon the fact that it is often the trustee, a third party, who is pleading fraud on secondhand information." *Id.* at 202; *see also In re Kelton Motors Inc.*, 121 B.R. 166, 187 (Bankr. D. Vt. 1990) ("This Court will insist upon the stringent standards [that apply] where a party to alleged fraudulent transaction has first hand knowledge of such fraud, . . . except where a trustee, a third party outsider to the fraudulent transaction, must rely on second hand knowledge.").

Similar concerns justify treating the Administrator as a third party under the Indemnification Provision in this case. As Mr. Luck points out, the Administrator asserts avoidance claims in this action that Alpha could not assert on its own behalf. "[I]t is well settled in the Second Circuit, that avoiding powers may be exercised by a debtor in possession only for the benefit of creditors, and not for the benefit of the debtor itself." *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 80, 94 (S.D.N.Y. 2008) (alteration in original) (internal quotation marks omitted);[5] *see also In re Murphy*, 331 B.R. 107, 124 (Bankr. S.D.N.Y. 2005) ("Fraudulent

---

[5] Mr. McMahon argues that *Adelphia* is distinguishable because the creditors in that case had been paid in full—which led the court to dismiss the avoidance actions in that case—while Alpha has unpaid creditors. *See* Reply at 11. But Mr. Luck does not rely on *Adelphia* for its holding that the avoidance action should be dismissed. Moreover, this factual distinction merely reinforces that principle that Mr. Luck asserts: that the Administrator's avoidance claims are solely for the benefit of Alpha's creditors.

conveyance laws were not designed to affect the legal relationship between the transferor and transferee."). The logic of *In re Skytec* also applies here: the Administrator's independence from Alpha gives him a greater incentive to pursue avoidance claims against former Alpha insiders.

Even assuming that the plain language of the Indemnification Provision does not foreclose Mr. McMahon's interpretation of the term "third party," this term does not unambiguously exclude the Administrator. Because avoidance claims can be prosecuted on behalf of creditors and because a plan administrator is more likely to pursue such claims, Mr. Luck faced a risk under the Employment Contract that, in the event of Alpha's bankruptcy, a plan administrator or trustee would seek to recover compensation paid to Mr. Luck, even if Alpha had made those payments voluntarily and in good faith. Thus, with respect to the litigation risk that the Indemnification Provision seeks to address, the Administrator "occupies a position separate and distinct from the bankrupt." *In re Robison*, 665 F.2d at 169. The Administrator is therefore more reasonably considered a third party for the purposes of this provision.

The bankruptcy plan documents cited by Mr. McMahon do not dictate a different conclusion. Mr. McMahon argues that the plan defines the avoidance claims as belonging to Alpha and merely assigns the authority to bring these claims to Mr. Hurwitz. The Indemnification Provision, however, applies to "any action . . . brought by a third party." Employment Contract at 5. The scope of the provision is defined in terms of the party bringing the action, not the source of the claims asserted in that action. Moreover, the plan's definition of the avoidance claims as belonging to Alpha does not change the fact that the Administrator must assert these claims on behalf of Alpha's creditors rather than Alpha itself. It is this fact that places the Administrator in a "separate and distinct" position from Alpha and indicates that he should be considered a third party under the Indemnification Provision. *See In re Robison*, 665

F.2d at 169 (clarifying the distinction between the trustee and the "the parties themselves" (internal quotation marks omitted)).

Accordingly, because the Indemnification Provision does not unambiguously exclude the Administrator from its scope, Mr. McMahon's motion to dismiss on this ground will be denied.

### 2. The Issue of Whether Judicial Estoppel Prevents Mr. Luck from Asserting That the Administrator Is a Third Party

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks omitted). When deciding whether this doctrine applies, courts typically consider three factors: (1) whether the party's position is clearly inconsistent; (2) whether the court adopted the party's former position in an earlier proceeding; and (3) whether "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."[6] *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)). Within the Second Circuit, courts "further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* at 696 (quoting *DeRosa*, 595 F.3d at 103). Therefore, "judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." *Id.*

In his judicial estoppel argument, Mr. McMahon relies on statements made by Mr. Luck in (1) a motion filed in the Wrongful Termination Action seeking to enjoin the Avoidance Action in the Delaware Bankruptcy Court; (2) a motion filed in the bankruptcy court to transfer venue to

---

[6] The Supreme Court noted, in enumerating these factors, that it did not "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel" and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751.

this Court; (3) a motion to stay the Avoidance Action pending adjudication of Mr. Luck's motion to transfer venue; and (4) a hearing in the bankruptcy court on the motion to transfer venue. But because the injunction motion was denied as moot and the motion to stay was never adjudicated, Mr. Luck's statements could have been adopted only in the Delaware Bankruptcy Court's order granting his motion to transfer venue.

In briefing related to the motion to transfer venue,[7] Mr. Luck stated that "[t]he Debtor was a defendant in the [Wrongful Termination Action], and in that action the Debtor brought and heavily litigated counterclaims against Luck." Reply Br. in Supp. of Mot. to Stay Proceedings, *Hurwitz v. Luck*, No. 22-50256 (LSS) (Bankr. D. Del. Aug. 17, 2022), ECF No. 30. When arguing that this Court was better positioned to address the issues presented in this case, Mr. McMahon also repeatedly stated that the Wrongful Termination Action involved the "same parties." Ex. F to Mot. to Dismiss, at 6, 17, ECF No. 26-7 ("Tr. of Mot. to Transfer Venue Hr'g"). In Mr. McMahon's view, Mr. Luck's argument that the current action (which includes the Administrator) involved the same parties as the Wrongful Termination Action (where Alpha was a named party) constitutes an assertion that Alpha and the Administrator are the same party. *See* Reply at 8.

Nonetheless, even when a party's statements appear to be "facially inconsistent," courts must "carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction." *United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir. 2015) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004)). In the context of the motion to transfer venue, Mr. Luck appeared to

---

[7] Because Mr. Luck's statements relating to the motion to stay were closely related to the motion to transfer venue and were also presented to the Delaware Bankruptcy Court, the Court will consider whether these statements may have been adopted in the order transferring venue.

conflate Alpha and the Administrator to emphasize this Court's familiarity with the circumstances of this case. But he did not assert categorically that the parties were identical. During the hearing on the motion to transfer venue, counsel for Mr. Luck repeatedly referred to the Administrator as distinct from Alpha. He noted that "Alpha brought . . . counterclaims against Mr. McMahon" which contained "underlying allegations . . . very similar to the ones . . . in the plan administrator's complaint." Tr. of Mot. to Transfer Venue Hr'g at 10. Mr. Luck also argued that the District of Connecticut would be a more convenient venue because the plan administrator lives in New York and had already obtained Connecticut local counsel. *See id.* at 14, 15–16.

This recognition of the distinction between Alpha and the Administrator is also reflected in the Delaware Bankruptcy Court's order granting the transfer of venue, where the court referred to the proceeding as "filed by the Plan Administrator" and noted that "the Plan Administrator alleges" or "the Plan Administrator argues." *See* Ex. G to Mot. to Dismiss, at 7, 9, ECF No. 26-8 ("Tr. of Oral Ruling on Mot. to Transfer Venue"). The court, like Mr. Luck, also pointed out that the Administrator works in New York, which made litigating in Connecticut more convenient. *See id.* at 11.

Within this context, it is evident that the statements in which Mr. Luck referred interchangeably to the Administrator and Alpha were made to emphasize this Court's familiarity with the parties and the issues presented in this case. This issue is far removed from the interpretation of the Indemnification Provision, and there is no "direct and irreconcilable contradiction" between the statements Mr. Luck made to the Delaware Bankruptcy Court and his argument that the Administrator is a third party under the Indemnification Provision. *Apple, Inc.*, 791 F.3d at 337. Thus, even assuming that the Delaware Bankruptcy Court adopted Mr. Luck's

statements and that he would derive an unfair advantage, Mr. Luck's positions are not clearly inconsistent.

Accordingly, Mr. McMahon's motion to dismiss on judicial estoppel grounds will be denied.

### 3. The Issue of Whether Mr. Luck's Prior Statements Were Judicial Admissions

"A judicial admission is a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020). "To constitute a judicial admission, the statement must be one of fact—a legal conclusion does not suffice." *Id.* Furthermore, to qualify as a judicial admission, a statement of fact must "have sufficient formality or conclusiveness" and "be intentional, clear, and unambiguous." *Id.* at 360–61.

Here, Mr. McMahon argues that, even if judicial estoppel does not apply, Mr. Luck's prior statements qualify as judicial admissions that bind him in this action. But whether the Administrator is a third party vis-à-vis Alpha is not a question of fact susceptible to judicial admission. The parties do not dispute the factual nature of the relationship between the Administrator and Alpha, only the significance of that relationship under the terms of the Indemnification Provision.[8] The question of whether Alpha and the Administrator are "the same party" under that provision is therefore primarily a question of law. Consequently, Mr. Luck's purported admissions cannot be conclusive on this issue. *See Tahirou v. New Horizon*

---

[8] The interpretation of a contract may present a question of fact if the terms are ambiguous. *See Birkhold*, 343 Conn. at 795. Mr. McMahon, however, does not contend that the Indemnification is ambiguous. More importantly, Mr. Luck's prior statements cannot be construed as a factual admission regarding the meaning of the potentially ambiguous terms of the Indemnification Provision, which was not at issue in the prior proceedings. The most that Mr. McMahon argues is that Mr. Luck admitted that Alpha and are generally "the same party." Reply at 6.

*Enterprises, LLC*, No. 3:20-cv-281 (SVN), 2023 WL 2613506, at *7 (D. Conn. Mar. 23, 2023) (holding that, because the question of whether a defendant is an employer under the Fair Labor Standards Act is a mixed question of law and fact, "Plaintiff's apparent concession that Lesinsky is not an employer . . . does not constitute a pure statement of fact that qualifies as a judicial admission).

Accordingly, Mr. McMahon's motion to dismiss on judicial admission grounds will be denied.

### E. The Issue of Whether Alpha's Payment of the Compensation at Issue in the Avoidance Action Bars Mr. Luck's Claims in this Case

Unlike in the Wrongful Termination Action, Mr. Luck is not seeking to recover from Mr. McMahon payments that Alpha allegedly failed to make under the Employment Contract. Here, there is no dispute that Alpha made the required payments. The problem, from Mr. Luck's perspective, is that the Administrator is seeking to recover those payments from Mr. Luck as fraudulent or preferential transfers.

In this situation, Mr. McMahon argues that Mr. Luck cannot seek indemnification for compensation that Alpha has already paid. *See* Mem. at 23–24. He contends that Alpha's payment of this compensation to Mr. Luck extinguished his obligation under the Guaranty and that requiring him to indemnify Mr. Luck for avoided transfers would effectively result in Alpha paying Mr. Luck twice. *See id.* at 24. Mr. McMahon further argues that Alpha itself could not be obligated to pay back money that it otherwise has a legal right to recover. *See id.* If Alpha cannot be held to such an obligation, Mr. McMahon contends that he cannot be required under the Guaranty to fulfill this obligation either. *See id.*

In response, Mr. Luck argues that a guarantor's obligation revives if a payment is avoided or refunded under a legal obligation. *See* Opp'n at 23–24. According to Mr. Luck, if the

Administrator recovers from Mr. Luck on his preferential or fraudulent transfer claims, those transfers should be treated as though they never occurred. *See id.* at 24–25. Thus, Mr. Luck argues that Alpha will not have effectively paid Mr. Luck twice. *See id.*

The Court agrees.

As explained above, Mr. McMahon's obligation to Mr. Luck under the broad language of the Guaranty is independent from Alpha's obligation to Mr. Luck, and Mr. Luck need not first establish that he could recover from Alpha in order to proceed against Mr. McMahon.

Furthermore, courts in other circuits "have recognized, without regard to any special guaranty language, that guarantors must make good on their guaranties following avoidance of payments previously made by their principal debtors." *In re SNTL Corp.*, 571 F.3d 826, 835–36 (9th Cir. 2009) (quoting *Lowrey v. Mfrs. Hanover Leasing Corp. (In re Robinson Bros. Drilling, Inc.)*, 6 F.3d 701, 704 (10th Cir. 1993)). Discussing a hypothetical example in which "Firm borrows money from Lender, with Guarantor as surety," the Seventh Circuit explained that, "if Firm collects from Lender, Lender may collect in turn from Guarantor, bearing the risk of Firm's insolvency it planned to bear all along." *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988). In *re Ozark Restaurant Equipment Co.*, 816 F.2d 1222 (8th Cir. 1987), the Eighth Circuit approved a bankruptcy court's ruling that "allowed the trustee to recover Ozark's loan payments to McIlroy Bank & Trust as preferential transfers" but also "held that Anderson and Yancey, as guarantors of the loan, were liable to the bank for the amount recovered by the trustee." *Id.* at 1223 n.4, 1224 n.6; *see also In re Quality Takes Time, Inc.*, 96 B.R. 818, 820 (Bankr. M.D. Tenn. 1989) (holding that the defendant guarantor "will be liable on the guaranty should the Trustee recover the payment from Third National"); *In re Herman Cantor Corp.*, 15 B.R. 747, 750 (Bankr. E.D. Va. 1981) ("Although a surety usually is

discharged by payment of the debt, he continues to be liable if the payment constitutes a preference under bankruptcy law. A preferential payment is deemed by law to be no payment at all.").

Mr. McMahon argues that some of these cases are factually distinguishable. *See* Reply at 12 n.1. But he does not offer a persuasive reason for departing from the general principle that "[w]hen a secondary obligation is discharged in whole or part by performance by the principal obligor . . . , the secondary obligation revives to the extent that the obligee, under a legal duty to do so, later surrenders that performance or collateral, or the value thereof, as a preference or otherwise." Restatement (Third) of Suretyship & Guaranty § 70 (1996). The Administrator may seek the avoidance of transfers to Mr. Luck only because Alpha has filed for bankruptcy. Reviving Mr. McMahon's obligation to indemnify Mr. Luck for any avoided transfers merely requires him to "bear[] the risk of [Alpha's] insolvency [he] planned to bear all along." *Bonded Fin. Servs., Inc.*, 838 F.2d at 894.[9]

Accordingly, Alpha's prior payments to Mr. Luck do not bar Mr. Luck's claims against Mr. McMahon for indemnification regarding potential avoided transfers.

---

[9] As the Restatement points out, adopting Mr. McMahon's position "would not necessarily be favorable to secondary obligors" such as Mr. McMahon:

> After all, an obligee would be reluctant to accept payment from a financially distressed principal obligor when there is available an action against a solvent secondary obligor because, if the payment later were held preferential, the obligee would have no recourse against the secondary obligor. To avoid such an inopportune situation, the obligee would have a strong incentive to proceed initially against the secondary obligor rather than accept payment from the principal obligor. As a result, in the absence of the rule set forth in this section, secondary obligors might well be called upon to perform more often rather than less often.

Restatement (Third) of Suretyship & Guaranty § 70 cmt. b. Thus, the better rule is to treat the avoided transfer as though it had never occurred and return the obligee's claim against the guarantor "to the position in which it would have been had there been no performance." *Id.* § 70 cmt. a.

**IV.**    **CONCLUSION**

For the foregoing reasons, Mr. McMahon's motion to dismiss the Third-Party Complaint

is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of June, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE